UNITED STATES of America,
Appellee,

v.

Ian WOODNER, Appellant.

Nos. 27833, 27834.

United States Court of Appeals
Second Circuit.

Argued March 12, 1963.

Decided May 28, 1963.

See also, D.C., 28 F.R.D. 22.

Samuel Gottlieb, Louis Bender, New
York City (Harry Giesow and Gains-

.burg, Gottlieb, Levitan & Cole, New York City on the brief) for appellant; Lloyd A. Hale, New York City, of counsel.

Sheldon H. Elsen, Asst. U. S. Atty., So. Dist. of New York (Robert M. Morgenthau, U. S. Atty., and Charles A. Stillman and Arnold N. Enker, Asst. U. S. Attys., on the brief) for appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Appellant was charged in the United States District Court for the Southern District of New York in a one-count indictment and a three-count indictment consolidated for trial, with wilful attempt to evade personal income taxes for the years 1950, 1951, 1952 and 1953, in violation of § 145(b), Internal Revenue Code of 1939. On a first trial, Judge Palmieri presiding, the jury failed to agree; on a second trial, Judge Palmieri again presiding, the jury found Woodner guilty on the counts involving taxes for the years 1952 and 1953 and failed to agree on the other counts. Appellant questions the sufficiency of the evidence to support a finding of intent to evade, the claimed failure of circumstantial evidence to exclude all reasonable doubt, the conduct of the trial, including the court's examination of witnesses and handling of jurors' requests for excuses, and inconsistency of verdict and disagreement on other counts. We find no error and affirm the judgment.

Essentially, the government's proof was directed to the handling of financial transactions of corporations controlled by Woodner which in two major respects was claimed to have resulted in income to Woodner personally, not reported on his returns for the years in question. These were payments of corporate funds for the hire of detectives investigating the activities of Woodner's ex-wife, with whom Woodner was having difficulties, involving according to Woodner a threat to control of the corporations, and for Woodner's personal expenses, and funds paid to one Jasen, Woodner's nominee,

by a lending institution, consisting of a percentage of interest on construction loans paid by two Woodner corporations engaged in FHA guaranteed apartment projects at or near Chanute Air Force Base at Rantoul, Illinois. On the counts involving the detective fees the jury failed to agree. The counts on which the jury found Woodner guilty, and which are before us on this appeal, involve the Jasen payments.

The borrowing corporations, Chanute Gardens Corporation and Chanute Apartments Corporation, were wholly owned subsidiaries of Shipley Corporation, as were numerous other similar corporations. Woodner controlled Shipley Corporation and through it its subsidiaries, including Jonathan Woodner Company. In 1950 Woodner negotiated with Chemical Bank and Trust Company construction loans on the two Rantoul projects, with an agreement that the Chanute corporations should be charged 4% interest, of which the bank would retain 3½% and remit ½% to Jonathan Woodner Company or its nominee. One Jasen, Woodner's employee and friend, was designated by Woodner as recipient of the funds and received from the bank checks for the agreed ½%. Jasen cashed these checks and placed the proceeds at first in a briefcase kept in Woodner's living room, also used as an office by Woodner, later in a safe-deposit box to which only Jasen and Woodner had access. There the cash was mingled with other personal funds of Woodner and used to pay bills of Woodner and in some instances to make advances on Woodner's account to the Jonathan Woodner Company. Because of restrictions on salary payments while the projects were in some difficulty, Woodner's reported salary dropped from $30,000 each in 1950 and 1951 to $3,500 in 1952 and $5,000 in 1953.

Woodner's principal argument seems to be that because of the size of his operations and the large amounts of money necessarily handled in carrying them out, he could not conceivably have intended to cheat the government on rela-

tively minor amounts such as were involved in the taxes on the so-called kickbacks of ½% in the two years for which he was convicted. That argument, however, was for the jury, which was surely entitled to reject it in the face of the quite numerous and quite usual indicia of fraud in the handling of the ½% payments. The use of a nominee, the conversion to cash, lack of usual records, commingling of funds, and personal use, not only support the inference that the funds were so within Woodner's control and disposition as to constitute income to him personally, but also the inference that the intent of the scheme was to conceal the receipt of the personal income in order to evade the tax due thereon.

■ He also claims that the cash was a reserve for emergency corporate expenses that might arise, either through scarcity of building materials or due to harassing litigation brought by the ex-Mrs. Woodner. But the small size of the amounts in question makes the reserve far better suited to meeting personal expenses than the contingencies that might befall a sizeable corporate complex. We have carefully considered the voluminous record before us, and conclude that, taking the view of the evidence most favorable to the government, there is ample evidence to support the verdict. United States v. Robertson, 298 F.2d 739 (2 Cir. 1962); United States v. Tutino, 269 F.2d 488 (2 Cir. 1959); United States v. Brown, 236 F.2d 403 (2 Cir. 1956).

■ Defendant also complains of the use of many items of circumstantial evidence against him. But the settled rule in this Circuit is that circumstantial evidence is not "probatively inferior to direct evidence." United States v. Brown, supra, 236 F.2d at 405. Thus, it may be weighed by the jury in the same way as direct evidence and need not exclude all other reasonable hypotheses than that of guilt to be given whatever probative force it deserves. United States v. Tutino, supra; United States

v. Moia, 251 F.2d 255 (2 Cir. 1958). That much of the evidence in this case was circumstantial, as is often true, is no obstacle to the conclusion that it was sufficient to convince a jury of guilt beyond a reasonable doubt. We therefore reject defendant's arguments directed toward sufficiency of the evidence and toward the charge on circumstantial evidence.

■ The asserted errors in the conduct of the trial largely involve communications between the trial judge and actual or prospective jurors. Defendant asserts error was committed in the method by which hardship excuses were granted. The prospective jurors were called to the bench and heard on their situations by the trial judge, who advised them that the trial would be of some four or five weeks duration. These conferences were in the sight of defendant and his counsel and of government counsel but out of their hearing. The judge made notes of the excuses and advised counsel what they were. We fail to see the remotest possibility of prejudicial error in this procedure, and defendant has not advised how prejudice might have arisen. Ordinarily, the jury clerks hear such excuses, and defendants have the benefit of neither notes nor physical presence. We have upheld the propriety of that mode of proceeding. United States v. Flynn, 216 F.2d 354, 386–388 (2 Cir. 1954), cert. denied 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955). Defendant's complaint about a procedure better calculated to safeguard his right to an impartial jury can hardly be accepted. In addition, no objection was made until a complete jury was selected and counsel were permitted to make peremptory challenges. This was obviously an attempt to get a look at the prospective jurors before deciding to object to the method of their selection. But it is then too late to raise the point. United States v. Meyer, 113 F.2d 387, 396 (7 Cir.), cert. denied 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459 (1940). Objections are not insurance against an unfavorable result but must ordinarily be raised

while there is still time to rectify the asserted error.

 Defendant next complains of private conferences between two jurors and the trial judge during the trial. At one point during the impaneling of the jury, in the consideration of requests by jurors to be excused, the judge spoke with Juror Mutchler, who thereafter on voir dire examination in open court acknowledged that his brother was an officer of the Chemical Bank New York Trust Company. Mutchler stated that he did not know the witnesses who were to be called that were bank employees, that his judgment would be unaffected by his brother's employment and that he could weigh all testimony without prejudice. He was allowed to remain on the jury. At a later time near the end of the trial, the trial judge spoke with Juror Koller to convince him to remain on the jury after he had asked to be excused for personal hardship. No stenographer was present, as the judge believed that this would have hampered free conversation. It was the recollection of Judge Palmieri and the Government attorney that all counsel had agreed to this latter meeting without objection from the defense. But even if this was not the case, we would hesitate to presume that prejudice resulted in the absence of some plain showing to that effect. See United States v. Agueci, 310 F.2d 817, 834–835 (2 Cir. 1962); United States v. Compagna, 146 F.2d 524 (2 Cir. 1944), cert. denied 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945). We have enough confidence in the integrity and fairness of the District Judges to assume that they will not make unfair remarks to jurors while undertaking administrative duties of this nature.

 The inconsequentiality of defendant's other assignments of error testifies to the essential fairness of this long and strenuously-contested trial. The questions asked witnesses by the trial court were all proper and necessary clarifications; a federal trial judge is not powerless to prevent half-truths from being considered by the jury. United

States v. De Fillo, 257 F.2d 835 (2 Cir. 1958), cert. denied 359 U.S. 915, 79 S.Ct. 591, 3 L.Ed.2d 577 (1959); United States v. Rosenberg, 195 F.2d 583 (2 Cir.), cert. denied 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687 (1952). Moreover, the Court's charge on the questions prevented any possible misunderstandings. Reference by the Government on summation to defendant's wealth at the time of the alleged offenses was a justifiable reply to the defense argument that there was no reason for a man possessing defendant's resources to conceal the amounts of income in question. See United States v. Stromberg, 268 F.2d 256, 270–271 (2 Cir.), cert. denied 361 U.S. 863, 80 S.Ct. 119, 123, 124, 130, 4 L. Ed.2d 102 (1959); United States v. Antonelli Fireworks Co., 155 F.2d 631 (2 Cir.), cert. denied 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946). Defendant's other arguments do not merit discussion.

The judgment of conviction on two counts of the indictment is affirmed.