COMMONWEALTH *vs.* RONALD MALCOMB MACDONALD
(No. 1).

Suffolk.  May 5, 1971. — July 22, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* List of Commonwealth's witnesses, Disclosure of statements by witnesses, Presence of defendant, Exceptions: failure to save exception, Argument by prosecutor. *Evidence,* Photograph, Scar.

In the absence of a showing of extraordinary circumstances or particular prejudice by the defendant in a capital case, there was no abuse of discretion in the denial of his pre-trial motions for the production of the names and addresses of the Commonwealth's witnesses, of all statements pertaining to the identification of the defendant, of the names and addresses of all persons who were called, but did not testify, before the grand jury, and of a copy of all pertinent statements by the Commonwealth's principal witness. [396-397]

Constitutional and presumptively prejudicial error on the part of a judge on the first day of trial of a capital case before sixteen empanelled jurors in privately interviewing successively two of the jurors, each of whom had informed a court officer that he knew one or more of the persons mentioned in the Commonwealth's opening, could not be raised for the first time on appeal where the defendant did not seasonably object to his absence from the

interviews and the error was clearly apparent and was curable by dismissal of the two jurors interviewed. [397-400]

The closing argument of a prosecutor showed no prosecutional misconduct which amounted to constitutional error requiring reversal of the defendant's conviction of murder in the first degree, notwithstanding remarks by the prosecutor that the defense was contrived, that certain unspecified testimony was "the rankest perjury," and that no intelligent jury could arrive at a verdict of manslaughter, and notwithstanding colloquial and derogatory characterizations which were reasonably descriptive and based on evidence. [400-403]

INDICTMENTS found and returned in the Superior Court on October 9, 1970.

The cases were tried before *Hudson*, J., and a motion for a new trial was heard by *Moynihan*, J.

*Martin K. Leppo* for the defendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was found guilty of murder in the first degree, without a recommendation that the sentence of death be not imposed. He also was found guilty of assault and battery by means of a dangerous weapon. There was evidence from which the jury could have found that the defendant and one Richard Mandile (Mandile) fired numerous shots through the open door of a South Boston tavern, killing one man and wounding another.

The defendant claimed that he was not an occupant of the motor vehicle from which the shots were fired. The Commonwealth's case was based largely on the testimony of Mandile that he and the defendant together fired shots into the tavern. The defendant argues a variety of assignments of error in this appeal which is subject to G. L. c. 278, §§ 33A-33G.

1. The defendant argues that the denial of certain pretrial motions was error, contending that he was denied his constitutional right to a fair trial. These motions sought the production of (a) the names and addresses of the Commonwealth's witnesses, (b) all statements pertain-

ing to the identification of the defendant, (c) the names and addresses of all persons who were called, but did not testify, before the grand jury, and (d) a copy of all Mandile's statements related to this matter. The judge allowed the defendant's separate motion for all statements and evidence reasonably tending to show that the defendant did not commit the offenses. Additionally, the judge allowed so much of the defendant's motion for a list of witnesses as requested a list of those who actually testified before the grand jury.

In these circumstances, the judge's action may be reversed only if he abused his discretion. *Commonwealth* v. *Salerno,* 356 Mass. 642, 648 (1970). *Commonwealth* v. *French,* 357 Mass. 356, 399 (1970), judgments vacated as to the death penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 (1972). *Commonwealth* v. *Therrien,* 359 Mass. 500, 507-508 (1971). *Commonwealth* v. *Lamattina,* 2 Mass. App. Ct. 203, 209 (1974). There was no abuse of discretion here. The defendant did not advance any extraordinary circumstances in support of his motions. He has not shown that any particular prejudice resulted from their denial. This is not a case where the defendant constitutionally was entitled to the materials sought and any denial of them would be presumptively prejudicial. See *Britt* v. *North Carolina,* 404 U. S. 226 (1971).

We have recently discussed the proper procedures to be followed when a defendant requests the production of statements by prosecution witnesses. *Commonwealth* v. *Lewinski,* 367 Mass. 889, 901-903 (1975). Those procedures were announced for the future and thus are not applicable here. We note, however, that, when Mandile testified, the defendant did not renew his motion for a copy of all Mandile's statements.

2. During the morning recess in the first day of trial, the judge interviewed successively two of the sixteen empanelled jurors. Each had informed a court officer that he knew one or more of the persons mentioned in

Commonwealth v. MacDonald (No. 1).

the Commonwealth's opening. Neither the prosecution, the defense counsel, nor the defendant was present during these interviews in the judge's lobby.

The first juror to be questioned stated that he had known socially two Boston police officers who, it appeared, would be testifying. Each of these police officers later testified that he was off duty and in the tavern at the time of the shootings. Neither identified MacDonald as an occupant of the vehicle from which the shots were fired — the crucial issue in this case. The first juror told the judge that he could weigh the testimony of these expected witnesses fairly and impartially with all the other testimony in the case. The second juror informed the judge that he had known a person referred to in the Commonwealth's opening but this fact would not prejudice his judgment. That person never testified. After these interviews were completed, the judge called the prosecutor and defense counsel into the lobby to hear the stenographer read back the interrogation of each juror.

When the judge resumed the bench, defense counsel objected and excepted "to the Judge's allowance of these two jurors to sit on the panel." Defense counsel, who is not the defendant's counsel on this appeal, made no further objection. He did not move for a mistrial. He did not request a voir dire hearing concerning the jurors' bias. He did not object to the judge's conduct of these private interviews or to the defendant's absence from them.

The defendant now argues that his exclusion from the "hearing at which evidence was taken to determine whether jurors were properly qualified" violated G. L. c. 278, § 6;[1] art. 12 of our Declaration of Rights;[2] and

---

[1] General Laws c. 278, § 6, reads in part as follows: "A person indicted for a felony shall not be tried unless he is personally present during the trial."

[2] Article 12 reads in part as follows: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly,

the Sixth and Fourteenth Amendments to the Constitution of the United States. He does not argue here the only issue raised before the trial judge and preserved by exception, namely, the judge's discretionary determination not to discharge the two jurors.

We accept for the purposes of this case the defendant's constitutional contention that he had a right to be present during the judge's interview of each of the jurors. *Commonwealth* v. *Robichaud*, 358 Mass. 300, 302 (1970).[3] Furthermore, we accept the principle that any violation of a constitutional right gives rise to presumptive prejudice, which normally requires a reversal of the conviction, in the absence of an affirmative showing by the Commonwealth that the error was harmless. See *Commonwealth* v. *Robichaud, supra; Commonwealth* v. *Tropeano,* 364 Mass. 566, 567 (1974); *Remmer* v. *United States,* 347 U. S. 227, 229 (1954), amplified in 350 U. S. 377 (1956); *Ellis* v. *Oklahoma,* 430 F. 2d 1352, 1355 (10th Cir. 1970), cert. den. 401 U. S. 1010 (1971). But see *United States* v. *Woodner,* 317 F. 2d 649, 652 (2d Cir. 1963), cert. den. 375 U. S. 903 (1963); *United States* v. *Neff,* 475 F. 2d 861, 863 (3d Cir. 1973), cert. den. 412 U. S. 949 (1973).

---

substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defense by himself, or his counsel, at his election."

[3] The *Robichaud* case involved an ex parte hearing concerning possible improper conduct of several jurors. That inquiry was of greater significance than the question investigated in this case. Where a limited inquiry on an administrative matter is concerned, the defendant may not have a constitutional right to be present. See *Commonwealth* v. *Curry, ante,* 195, 201-202 (1975) (no error in judge's conversation with a court officer); *United States* v. *Larkin,* 417 F. 2d 617 (1st Cir. 1969), cert. den. 397 U. S. 1027 (1970) (no error in judge's private interview with juror who saw defendant in custody); *United States* v. *Neff,* 475 F. 2d 861, 863 (3d Cir. 1973), cert. den. 412 U. S. 949 (1973) (no error in judge's private but transcribed conversation with juror who knew a character witness for the government).

However, in this case the defendant did not object to his absence from the private interviews. The error was clearly apparent at trial, and could have been cured easily by the judge's dismissal of the two challenged jurors, as sixteen jurors had been empanelled. Where the defendant thus has failed to make a timely objection, he should not be permitted to raise the issue for the first time on appeal. *Amado* v. *Commonwealth*, 349 Mass. 716, 718, 722 (1965). See *Snyder* v. *Massachusetts*, 291 U. S. 97, 106 (1934); *United States* v. *Larkin*, 417 F. 2d 617, 618 (1st Cir. 1969), cert. den. 397 U. S. 1027 (1970); *United States* v. *Jorgenson*, 451 F. 2d 516, 520-521 (10th Cir. 1971), cert. den. 405 U. S. 922 (1972).

3. There was no error in permitting the Commonwealth to introduce black and white photographs of portions of the interior of the tavern, in which there were apparent blood stains, or in permitting the surviving victim to show the jury a scar on his leg.[4] These were matters of discretion, and there was no abuse. *Commonwealth* v. *Torres*, 367 Mass. 737, 742 (1975).

4. There was no error in permitting the prosecution to argue to the jury that the defense was contrived. The defense consisted essentially of the claim that Mandile lied in placing the defendant at the scene of the shootings, and that another man, later deceased, was the second man in the motor vehicle. This defense was offered mostly through witnesses to whom the defendant had access while he was in prison awaiting trial. The defendant was visited repeatedly during this period by an attorney who then represented several of the defense witnesses, but not the defendant.

There was no abuse of discretion, or other error of law, in permitting the prosecution to establish these facts by questions to the defendant. The judge instructed the jury that no adverse inference should be drawn from the

---

[4] The defendant's contention that a photograph of the deceased victim was admitted in evidence is unsupported by the record.

fact that the defendant changed counsel several times. Comment by the prosecutor on the tactics of the defense, based on the evidence and what the jury could observe in the court room, is permissible. *Commonwealth* v. *Dunker,* 363 Mass. 792, 799-800 (1973), denial of habeas corpus affd. sub nom. *Dunker* v. *Vinzant,* 505 F. 2d 503 (1st Cir. 1974). *Commonwealth* v. *Valliere,* 366 Mass. 479, 494 (1974).

Although it was highly questionable to characterize certain unspecified testimony as "the rankest perjury that will probably ever be heard in a courtroom," the question of who was telling the truth with regard to the identity of the second occupant of the motor vehicle was the fundamental issue at trial. The defendant argued in his closing that there was no reason for certain defense witnesses to commit perjury. It was not error to permit the prosecutor to respond concerning the untruthfulness of certain other defense witnesses, and the defendant anticipated in his closing that the prosecutor would do this. Nor was it error to permit the prosecution to attempt to establish that the defendant in custody had the opportunity to fabricate an alibi defense. Of course, the credibility of the witnesses was for the jury, as the judge made clear in his charge.

Although the defendant argues that the closing remarks of the prosecutor deprived him of a fair trial, there is no showing of any prosecutorial misconduct which amounts to constitutional error. He cites no analogous case involving a prosecutor's closing remarks. Naturally, cases of this sort turn on their individual facts. Occasionally the question is so close that every court which faces it, except a single judge court, will disagree on the proper answer. See, e.g., *Commonwealth* v. *DeChristoforo,* 360 Mass. 531 (1971) (five to two decision); *DeChristoforo* v. *Donnelly,* 473 F. 2d 1236 (1st Cir. 1973) (two to one decision); *Donnelly* v. *DeChristoforo,* 416 U. S. 637 (1974) (six to three decision, one justice disagreeing with the majority on the constitutional question [*id.* at 651,

Douglas, J., dissenting]). In this case the prosecutor's argument viewed in its entirety does not present such a close question.

5. There was no error in other portions of the prosecutor's closing argument. (a) When the prosecutor remarked in his closing that no intelligent jury could arrive at a verdict of manslaughter, and the defendant immediately objected to the statement, the judge properly agreed that manslaughter was not involved in this case. The judge did not instruct the jury on manslaughter, and the defendant did not request such an instruction. (b) The prosecutor's reference to the defendant as a "hard-boiled criminal" and to certain unspecified individuals who had been in the court room during trial as "bums" does not require reversal. Evidence of the defendant's prior convictions, which was admitted for impeachment purposes, justified the label "hard-boiled criminal."[5] The reference to "bums" came during the somewhat grandiloquent conclusion of the prosecutor's argument. He urged the jury to tell the "bums, some of whom were in the courtroom during the trial, and all the hoodlums of South Boston and other parts of the city that this County will not tolerate this type of crime." Of course, the argument was improper to the extent it asked the jury to decide the case on general considerations. This defect was corrected by the judge's charge that the jury must decide the case on the evidence. Although it is not clear to whom the prosecutor was referring, several defense witnesses were felons with more than one conviction on their records. Although the words chosen were colloquial and derogatory, they were reasonably descriptive and no more prejudicial than the evidence on which the characterizations were based.

---

[5] The defendant had been convicted of assault and battery, assault and battery on a police officer, assault and battery with a knife, assault and battery with a lug wrench, contributing to the delinquency of a minor, and receiving stolen goods (two convictions), among other crimes.

6. The defendant's challenge to the denial of his motion for a new trial raises no independent issue. That motion properly was denied.

We have reviewed the entire record, pursuant to our duty under G. L. c. 278, § 33E, and find no reason to take any action thereunder. However, the judgment on the murder indictment must be reversed in so far as it imposes the death sentence. See *Commonwealth* v. *Stone*, 366 Mass. 506, 508 (1974); *Commonwealth* v. *Cassesso, ante,* 124 (1975). The case is remanded to the Superior Court, where the defendant must be sentenced to life imprisonment.

*So ordered.*