**FREEDMAN, D.J.** This case came before me on defendants' cross-motions for summary judgment. Based on my review of the pleadings, the affidavits and depositions on special questions submitted by the parties, and the memoranda of counsel, and for the reasons set forth in the Memorandum of same date, it is hereby ordered, adjudged and decreed that partial summary judgment in the amount of $10,748 be entered in favor of defendant Burns, and that partial summary judgment in the amount of $10,748 be entered in favor or defendant Newland, both payments to be made to said defendants as administrators of the estate of William Newland, also known as William Berger, Jr.

The Clerk of this Court is directed to pay these judgments to the respective defendants on their duly authorized representatives out of the fund of $21,496 deposited in the registry of this Court by plaintiff Prudential Insurance Company of America.

Judgment accordingly.

**Frank H. Freedman**
**United States District Judge**

**Ronald Malcomb MacDONALD**
**Petitioner**
**V.**
**Frank GUNTHER, Respondent**

**No. 76-626-MA**

United States District Court
Commonwealth of Massachusetts

**May 19, 1981**

465

Martin K. Leppo, Esq., counsel for plaintiff

Anthony Traini, Esq., counsel for plaintiff

Thomas Mundy, Esq., Asst. District Attorney, counsel for defendant

Robert Greco, Esq., Asst. Attorney General, counsel for defendant

## MEMORANDUM AND ORDER

MAZZONE, D.J. This is a habeas corpus action under 28 U.S.C. sec. 2254, in which petitioner, Ronald M. MacDonald challenges two separate Massachusetts state court criminal convictions. On January 28, 1972, MacDonald was convicted by a jury on two indictments charging him with first degree murder and assault and battery by means of a dangerous weapon. There was evidence from which the jury could have concluded that petitioner and one Richard Mandile fired a number of shots through the open door of a tavern, killing one man and wounding another.

Approximately one month later, on February 22, 1972, petitioner was convicted by a jury of a separate assault and battery by means of a dangerous weapon, arising out of an incident which occurred a few hours before the shootings described above. Both convictions were upheld on direct appeal by the Supreme Judicial Court of Massachusetts. See **Commonwealth v. Ronald Malcomb MacDonald**, 368 Mass. 395 (1975) (**MacDonald I**); **Commonwealth v. Ronald Malcomb MacDonald**, 368 Mass. 403 (1975) (**MacDonald II**).

The instant petition contains five separate grounds for relief, all of which were considered and rejected by the Supreme Judicial Court on direct appeal.[1] The grounds are:

(1) The prosecutor's closing argument was inflammatory and prejudicial.
(2) The admission of certain evidence was improper.
(3) The prosecutor's questioning regarding sequence of counsel was improper.
(4) The defendant was unconstitutionally excluded from juror interviews.
(5) The denial of a continuance of the second trial was improper.

### (1) The Prosecutor's Closing Argument

MacDonald first argues that certain remarks by the prosecutor during his closing argument in petitioner's **first** trial were so inflammatory and prejudicial as to deprive him of a fair trial. The specific remarks are set forth fully in petitioner's brief, and need not be restated in full here. Briefly, the jury was told: there was no way that they could arrive at a verdict of manslaughter based on the evidence in the case (a position with which the trial judge agreed); certain defense witnesses changed their stories after hearing the prosecution's evidence; the defense witnesses perjured themselves; the alibi defense presented had been contrived; the petitioner was a "hard boiled criminal;" and certain unidentified[1] individuals present in court during the trial and presumably associated with the petitioner were "bums" and "hoodlums."

Petitioner contends the above remarks ran afoul of the standards announced by the Supreme Court in **Donnelly v. DeChristoforo**, 416 U.S. 637 (1974). The Supreme Judicial Court considered each of the challenged remarks fully and concluded that none of the prosecutor's

---

[1] Although petitioner challenges several factual determinations made by the Massachusetts courts, the record is clear and fully developed, and it does not appear that an evidentiary hearing would add anything to petitioner's written submissions. Accordingly, we conclude that a hearing is not required.

individual statements, nor the argument in its entirety, constituted error of constitutional magnitude. We agree.

This was an extended trial. The advocacy of both counsel was strong, vigorous and, at times, emotional. Closing arguments by both sides were not classic examples of proper argument. Defense counsel referred to the government's chief witness in terms having a particular connotation in narcotics cases, suggesting factual matter not in the record. Defense counsel also asked the jury to consider the "suspicious" circumstance that Sargeant Daley, a prosecution witness, always conveniently appeared in the right place at the right time. He told the jury that there was honor among criminals and a criminal would not lie about a brother criminal. This was perhaps a stratagem to soften the argument he clearly anticipated from the prosecution, namely, that the defense witnesses had been briefed and carefully organized. On several occasions, counsel was admonished by the judge for improper argument or for straying from the evidence of record.

While not approved, the prosecutor could be expected to reply in kind under the principle of fair reply. **United States v. Houde,** 596 F.2d 696, 703-704 (5th Cir.), **cert. denied,** 447 U.S. 965 (1979). The prosecution is entitled to reply, when defense counsel attacks the credibility of government witnesses by suggesting a frame-up or contrivance, with suitable rebutting language. **United States v. Praetorius,** 622 F.2d 1054, 1060-61 (2nd Cir. 1980). **See also United States v. Potter,** 616 F.2d 384, 392-393 (9th Cir. 1979) (prosecutor's argument neutralized when court gave cautionary instructions and defense made similar comments).

An improper statement in closing argument is not grounds for reversal unless it results in prejudice to the substantial rights of the defendant. **Houde,** 596 F.2d at 703. We do not believe there was such prejudice here.

Taken as a whole, we cannot say that the prosecutor's argument was so egregious as to permeate the entire trial. The remarks concerning perjury were reasonably intended to emphasize the discrepancies between defense testimony and other evidence at trial. **United States v. Risi,** 603 F.2d 1193, 1196 (5th Cir. 1979). The prosecutor is permitted to comment on what he feels the evidence establishes and from which the jury can draw permissible inferences. Here, the efforts were perhaps overzealous but, to some extent, the prosecutor's characterizations were invited by defense counsel's argument.

Finally, we note that the court gave detailed, explicit instructions that issues of truth and credibility were the sole responsibility of the jury.

While we are concerned about the frequent misuse of closing argument—a final exhortation and dramatic appeal to the emotions of a jury—we do not believe that this argument, taken as a whole, was so inflammatory and prejudicial as to deny the defendant a fair trial.

## (2) The Court's Admission of Certain Evidence

Petitioner next argues that the trial court's admission into evidence in **MacDonald I** of certain photographs of the scene of the shooting, and its allowing one of the shooting victims to show the jury his scars, was unnecessary to prove material facts and aroused the emotions of the jury against him. However, the very cases cited by MacDonald to support this claim acknowledge that admission of such evidence is well within the sound discretion of the trial judge. See **Commonwealth v. Stirling,** 351 Mass. 68, 72 (1966); **Commonwealth v. D'Agostino,** 344 Mass. 276, 279 (1962). The Supreme Judicial Court on direct appeal concluded that the trial judge had not abused his discretion in admitting the challenged evidence. We agree and reject this ground for relief as well.

## (3) The Prosecutor's Questioning

## Regarding Sequence of Counsel

At various points during petitioner's first trial, the prosecutor referred to the fact that MacDonald had been represented by a series of attorneys, and that another attorney who represented several defense witnesses but not MacDonald visited him prior to trial at the Charles Street Jail. Petitioner argues these comments unfairly suggested the existence of a pre-trial conspiracy to concoct evidence favorable to the defense.

As the Supreme Court indicated, however, there was no error in allowing the prosecutor to argue that the defense was contrived. The trial judge properly instructed the jury to draw no adverse inferences from the fact that the petitioner had changed counsel several times. Under these circumstances, petitioner's conviction cannot be said to have been tainted by constitutional error. **Donnelly,** 416 U.S. at 644.

### (4) The Exclusion of the Defendant From Juror Interviews

During the first trial, the judge interviewed two jurors (out of sixteen that had been impanelled) who indicated that they knew several persons mentioned in the prosecutor's opening statement. After speaking with the jurors, the judge ordered the recorded colloquy read to both counsel. Defense counsel then objected to the court's discretionary decision to allow the jurors to remain on the panel.

Petitioner now argues that the trial court's failure to invite him to attend the original interview violated his constitutional rights. On appeal, the Supreme Judicial Court held that MacDonald's failure to raise this particular objection at trial precluded him from pursuing it for the first time on appeal.

At the outset, we regard the Supreme Judicial Court's characterization of petitioner's objection as a factual determination which cannot be disturbed unless clearly erroneous or "tainted." 28

U.S.C. sec. 2254(d); **Sumner v. Mata,** No. 79-1601, slip opinion, (S. Ct., January 21, 1981). Petitioner here has made no such showing, and accordingly, is barred from relying upon his exclusion from the juror interviews as a basis for habeas relief. **Wainwright v. Sykes,** 433 U.S. 2 (1977).

Even if we were required to reach the merits of this claim, however, we would reach the same conclusion. The interviews in question here, though held outside the petitioner's presence, were on the record. Counsel was given an opportunity to review the record of both interviews, and request additional questions or other appropriate measures to assure the integrity of the jury panel. There is not even a hint in this record that petitioner was in any way prejudiced by the court's initial failure to hold the interviews in MacDonald's presence.[2]

Under these circumstances, in order to rule in petitioner's favor, we would have to establish a **per se** rule that whenever a trial judge interviews a juror outside the presence of the defendant, he commits reversible constitutional error regardless of prejudice. The far greater weight of authority mandates against such a rule, and we decline to adopt it in this instance. See **United States v. Pappas,** 639 F.2d 1, 2-3 (1st Cir. 1980) (reversal of conviction not required where trial court interviewed prospective jurors outside defendant's presence absent some prejudice); **Jackson v. Hutto,** 508 F.2d 890, 891-92 (8th Cir. 1975); **United States v. Neff,** 475 F.2d 861, 863-64 (3d Cir.), **cert. denied,** 412 U.S. 949 (1973); **United States v. Woodner,** 317 F.2d 649, 651-52 (2d Cir. 1963). **Cf. United States v. Neal,** 320 F.2d 533, 536 (3d Cir. 1963); **Burson v. Engle,** 432 F. Supp. 929, 931-32 (D. Ohio 1977), **aff'd,** 595 F.2d 1222 (6th Cir.), **cert. denied,** 442 U.S. 944 (1979).

---

[2] As the Supreme Judicial Court indicated and the record demonstrates, only two of the three persons known to the jurors actually testified at the trial, and their testimony did not relate to the critical issue in the case, i.e., petitioner's presence at the scene of the crime.

469

### (5) The Denial of a Continuance

Finally, MacDonald contends that the trial judge's denial of his request for a continuance of his **second** trial so that he could obtain a transcript of certain testimony at his first trial violated his constitutional rights. Petitioner asserts the transcript was needed to impeach Mandile at the second trial by proof of inconsistent statements and bias.

However, contrary to petitioner's assertion, the Supreme Judicial Court, after examining both the transcript of the first trial and Mandile's testimony at the second trial, concluded that there were no significant discrepancies between the two. Petitioner has made no showing that the finding of the Supreme Judicial Court in this respect was clearly erroneous or tainted. **Sumner v. Mata, supra.** In view of this factual determination, any error resulting from the trial court's refusal to grant a continuance was necessarily harmless. See **United States ex rel Cadogan v. LaVallee,** 428 F.2d 165, 167 (2d Cir. 1970). Accordingly, this ground for habeas relief must also be rejected.

### CONCLUSION

Our **de novo** review of the briefs, memoranda, and the entire record in this case persuades us that petitioner's convictions were not secured by any violation of his rights under the Federal or Massachusetts Constitutions. Accordingly, the petition for a writ of habeas corpus is denied.

SO ORDERED.

**A. David Mazzone**
**United States District Judge**