COMMONWEALTH *vs.* WILLIAM HENRY HICKS, JR.

Plymouth. March 19, 1986. — April 23, 1986.

Present: PERRETTA, DREBEN, & SMITH, JJ.

*Homicide. Malice. Self-Defense. Defense of Others. Practice, Criminal,*
  Question by jury, Instructions to jury, Interrogation of jurors, Presence
  of defendant. *Jury and Jurors. Constitutional Law,* Presence of defendant
  at criminal trial. *Error,* Harmless.

At a murder trial, the evidence, including testimony that the defendant, hours
  before the victim was shot, had asked another person, "Do you still
  want me to get that man?" and, on receiving an affirmative answer, had
  armed himself with a rifle; that, during a confrontation between that
  person and the victim, the defendant had displayed the rifle, yelling,
  "Just give me the word!"; and that he thereupon shot the unarmed victim
  at point blank range, was sufficient to establish malice aforethought and
  to permit the jury to conclude beyond a reasonable doubt that the defend-
  ant was guilty of murder in the second degree. [141-142]
A judge's response to an inquiry from the jury during their deliberations at
  a murder trial, restating the definition and elements of self-defense,
  created no substantial risk of a miscarriage of justice by omitting reference
  to defense of others, where the jury's inquiry had mentioned only self-de-
  fense and where the issue of defense of others, which had been raised
  only briefly during closing argument, had been explained in a separate
  portion of the judge's original charge. [142-144]
At a murder trial, the judge's supplemental instructions on self-defense, con-
  sidered in light of the entire charge, created no substantial risk of a
  miscarriage of justice. [144]
Although, under art. 12 of the Massachusetts Declaration of Rights, the de-
  fendant at a murder trial was entitled to be present while the judge
  inquired of the jurors whether they had read a certain newspaper article,
  which referred to the defendant's prior convictions of murder and other
  serious crimes, the exclusion of the defendant during the voir dire of
  the jurors, to which no objection was made, created no substantial risk
  of a miscarriage of justice in light of the judge's action in dismissing
  the three jurors who replied that they had read the article. [145-147]

INDICTMENT found and returned in the Superior Court De-
partment on November 29, 1983.

The case was tried before *Elizabeth J. Dolan, J.*

*Arlene Beth Marcus* for the defendant.

*Ann E. Rascati,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted by a jury of second degree murder on an indictment that charged him with murder in the first degree. On appeal, the defendant argues that his conviction should be reversed because the judge erred in (1) denying his motion for a required finding of not guilty; (2) failing to include in her supplementary instructions an instruction regarding defense of others; (3) polling the jury about a newspaper article without the defendant's being present, and refusing to excuse a juror who had indicated that she had seen the article.

1. *Denial of the motion for a required finding of not guilty.* The defendant contends that the judge erred in denying his motion for required findings of not guilty of first and second degree murder. We recite the main facts that could have been found by the jury. In March, 1983, Priscilla Rogers separated from her husband, Ricardo Rogers, and moved from New Britain, Connecticut to Brockton, Massachusetts. In August, 1983, Priscilla enlisted the help of her brother, Robert Wesley, Jr., the victim in this case, to move furniture that she had left behind in Connecticut to her new residence in Brockton. During the course of loading the truck, Ricardo showed up, and an argument ensued between husband and wife. The police were called and they made them unload the truck. Approximately two weeks later Priscilla and Ricardo resolved that dispute, and made arrangements to move the furniture from the Connecticut apartment to Brockton with the help of Ricardo and the defendant, who is Ricardo's step-brother.

On September 2, 1983, the day of the move, Priscilla received a telephone call at her husband's apartment from Robert. During the course of that conversation, he informed Priscilla that he was going to wait until the furniture had been unloaded in Brockton and then he was going "to kick [Ricardo's] butt," and beat him up. Priscilla informed her friend, Deborah Melendez, about her conversation with her brother. Melendez subse-

quently telephoned Robert, and asked if he was going to kill Ricardo. Robert responded, "No, [he was] just going to kick his ass up and down Hereford Street [in Brockton]." Priscilla told Ricardo about the threats from Robert. The defendant was present when Priscilla told Ricardo of the threats. Ricardo repeatedly told Priscilla not to worry about her brother. A little later she overheard the defendant ask Ricardo, "Do you want me to still get that man?" Ricardo responded in the affirmative.

After packing the furniture in a trailer attached to the defendant's car, Priscilla, Deborah Melendez, Ricardo and the defendant left for Massachusetts. On the way, the defendant stopped at his parents' home where he obtained his father's rifle which he placed in the trunk of his car. They then proceeded to Hereford Street in Brockton.

When they arrived in Brockton, they started moving furniture into Priscilla's apartment. At some point thereafter, Priscilla observed her brother, Robert, crossing the street accompanied by two friends. She yelled up to her husband, "Robert's here," and told her brother, "Don't start, I don't want any trouble." She then went to call the police. As he crossed the street, Robert took his T-shirt off. At that point he was dressed only in jogging pants.

The defendant and Ricardo were observed running out of the house and jumping over the porch railing to get to the automobile. At the automobile, Ricardo took a table leg from the trunk and the defendant got the rifle. Ricardo then returned to the porch where Robert was standing. Ricardo went up to Robert and started arguing with him. They were standing, chest to chest, yelling at each other. No blows were struck.

During this argument the defendant was pacing on the sidewalk, shaking the gun and yelling, "Just give me the word, give me the word. We don't have to take this. Just give me the word." At that point, Robert said, "I'm not afraid of your gun," and walked towards the defendant. Robert was unarmed and within a few feet of the defendant when he was shot and killed. The defendant contends it was error to deny his motion for required findings of not guilty of first and second degree murder because the Commonwealth failed to show deliberate

premeditation or malice aforethought on the part of the de-
fendant.[1]

In order to resolve this issue, we must determine whether
the evidence, including inferences that are not too remote ac-
cording to the usual course of events, "read in a light most
favorable to the Commonwealth, was sufficient to satisfy a
rational trier of fact of each element of the crime beyond a
reasonable doubt." *Commonwealth* v. *Basch,* 386 Mass. 620,
622 (1982). The evidence tended to show the following facts.
Hours before the shooting and after he learned that there might
be a confrontation between the victim and Ricardo, the defend-
ant asked Ricardo if he wanted him to "get that man." The
jury could infer that the defendant was referring to the victim.
After Ricardo answered in the affirmative, the defendant armed
himself with a rifle. Later, at the confrontation, the defendant
paced the sidewalk, shaking the rifle and yelling, "Just give
me the word, give me the word. We don't have to take this.
Just give me the word." A short time later the victim, unarmed
and clad only in jogging pants, was shot at point blank range
by the defendant. The evidence was clearly sufficient to estab-
lish malice aforethought and permit the jury to conclude beyond
a reasonable doubt that the defendant was guilty of murder in
the second degree.

2. *Alleged errors in the supplemental instructions.* The
judge instructed the jury on self-defense and also on defense
of others. See *Commonwealth* v. *Martin,* 369 Mass. 640
(1976). There was no objection. After the jury commenced its
deliberations, it sent two questions to the judge. She reviewed
the questions with counsel, off the record.[2] She then gave

---

[1] The defendant argues that it was error for the judge to deny his motion
for a required finding of not guilty of first degree murder. Even if the
judge's action was error, which it was not, "the error would be rendered
harmless beyond a reasonable doubt by the jury's verdict of murder in the
second degree." *Commonwealth* v. *Forde,* 392 Mass. 453, 456 (1984),
citing *Commonwealth* v. *Benoit,* 389 Mass. 411, 429 (1983). We add that
there was ample evidence of deliberate premeditation that would support a
conviction of murder in the first degree.

[2] It has been stated that "where possible, any messages or questions from
the jury to the judge should be in writing; that they should be shown to

supplemental instructions to the jury in answer to their questions.

a. The first question requested the judge to review the definition and elements of self-defense. The judge gave additional instructions on self-defense but omitted any reference to defense of others. There was no objection. Appellate counsel argues that the supplemental instructions were fatally defective because of that omission.

It was not error for the judge to respond to the jurors' question by repeating her instruction on self-defense without including an instruction on defense of others.[3] Both the wording of the question and the facts elicited at trial compel the conclusion that the jurors' inquiry was limited to *defense of self* and did not encompass defense of others. At trial, counsel focused on the need of the defendant to defend himself prior to the shooting of the victim. Both Ricardo and the defendant testified to aggressive acts on the part of the victim directed at the defendant. Indeed, the main thrust of trial counsel's closing argument was the defendant's need to defend *himself*. At best, there was only brief reference in the closing argument by counsel to defense of others. The judge, in turn, devoted a large part of her instructions to the definition and elements of defense of self. Her explanation of the defense of others was brief and separate from her instructions on defense of self. Thus, it is reasonable to conclude that the jurors' question was limited to

---

counsel and immediately placed on record; and that any reply thereto by the judge to the jury should also be placed on record in the presence of counsel, if available." *Thames* v. *Commonwealth,* 365 Mass. 477, 478 n.2 (1974). In addition to the foregoing, we urge trial judges to put *on the record* discussions concerning the jurors' questions and the proposed responses.

[3] Because there was no objection to the supplemental instructions, our review is limited to determining "whether [the judge's supplemental instructions were] so erroneous that [they] created a 'substantial risk of a miscarriage of justice.' " *Commonwealth* v. *Pickles,* 393 Mass. 775, 776 (1985), quoting from *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979).

the defense of self and did not require a further instruction on defense of others.[4]

b. The second question asked by the jury inquired, "[I]s it the jury's decision that options were available to the defendant that is the issue in self-defense, or is it the jury's decision that the defendant believed that he had options which is the issue?" During her answer to that question the judge stated that it was not necessary for the defendant to "jump off the roof" of the courthouse to avoid combat. Appellate counsel argues that the illustration was inappropriate because it implied that a defendant would have to employ all means short of inviting certain death to escape combat before he could be found to be justified in using deadly force in self-defense. That contention is without merit. The judge's additional instructions, "although delivered after a period of jury deliberation, must be read in light of the entire charge." *Commonwealth* v. *Sellon,* 380 Mass. 220, 233-234 (1980). A reading of the entire charge including the supplemental instructions demonstrates that the judge correctly instructed the jury on all aspects of self-defense. "The lack of an objection in this case suggests that the defendant's trial counsel was satisfied with the instructions, at least to a point where counsel felt that the jury had received competent guidance on the legal principles governing the issue of self-defense." *Commonwealth* v. *Vidito,* 21 Mass. App. Ct. 332, 335 (1985).

One final note about supplemental instructions. Although it has been stated that "[a] judge in giving further instructions is not required to repeat all aspects of his [or her] prior charge," see *Commonwealth* v. *Sellon,* 380 Mass. at 234, a considerable number of cases cite errors of omission in supplemental instructions as a ground for an appeal. It would be helpful to us for trial judges to adopt the following practice when giving supplemental instructions to the jury. At the beginning and again at the end of the supplemental instructions, the judge should advise the jurors that all of the instructions are to be considered

---

[4] Trial counsel must have arrived at the same conclusion because he did not object to the supplemental instructions. See *Commonwealth* v. *Ely,* 388 Mass. 69, 73-74 (1983).

as a whole and that the supplemental instructions are to be considered along with the main charge, unless, of course, the supplemental instructions are given to correct an error in the main charge. *United States* v. *Meadows,* 598 F.2d 984, 990 (5th Cir. 1979).

3. *Questioning of jurors in the absence of defendant.* On Friday, December 14, the jury were empanelled and the judge instructed them to "avoid all reference to this case [including anything that may appear] in the media." On Monday, a newspaper article, published Saturday, was brought to the judge's attention. The article stated that the defendant had recently been convicted of another murder and referred to the defendant's prior convictions for armed robbery and kidnapping. It also mentioned that the trial judge had ruled that evidence of the previous murder and the defendant's subsequent conviction would not be admissible at trial.

The judge undertook to question each juror individually in her lobby in order to determine if any juror had read the article and, if so, whether it had had any influence on him. Both counsel were present but not the defendant. Prior to the questioning the judge inquired of defense counsel if he had discussed with the defendant her intention to question the jurors. Defense counsel stated that he had advised the defendant of the nature of the questioning that was to take place and that defense counsel would be present. Defense counsel also indicated that the defendant was "in agreement" with the procedure. The individual questioning of each juror proceeded without the presence of the defendant. Appellate counsel argues that the defendant's absence from the hearing constituted error.

The question whether a defendant must be present at a voir dire conducted during a trial at which jurors are questioned by the judge has engaged the attention of the Supreme Judicial Court on prior occasions. In *Commonwealth* v. *Robichaud,* 358 Mass. 300 (1970), the defendant filed a motion for mistrial based on witnesses' statements that they overheard three jurors discuss the case and also heard them express the opinion that the defendant was guilty. The hearing on the motion was held in the judge's lobby without the presence of the defendant.

Defense counsel objected to the judge's action in allowing the hearing to proceed in the defendant's absence. On appeal, the court held that a defendant has a constitutional right, under art. 12 of the Declaration of Rights, to be personally present at a voir dire hearing conducted during his trial on the question of juror misconduct, and exclusion of the defendant *over his objection* was reversible error. *Id.* at 303.

In *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395 (1975), during the first day of trial, the trial judge interviewed two of the empanelled jurors without the presence of the prosecutor, defense counsel, or the defendant. Both jurors told the judge that they knew one or more persons mentioned in the Commonwealth's opening statement. After the interviews were completed, the judge called the attorneys into the lobby to hear the court reporter read back the interrogation of each juror. The judge permitted the jurors to remain on the jury. Defense counsel objected to that action of the judge, but did not object to the judge's conduct of the interviews or to the defendant's absence from them. The court stated that it accepted "for the purposes of this case the defendant's constitutional contention that he had a right to be present during the judge's interview of each of the jurors." *Id.* at 399. The court further stated that it accepted "the principle that any violation of a constitutional right gives rise to presumptive prejudice, which normally requires a reversal of the conviction, in the absence of an affirmative showing by the Commonwealth that the error was harmless." *Ibid.* However, the court ruled that, because the defendant failed to object at trial, "he should not be permitted to raise the issue for the first time on appeal." *Id.* at 400.

In this case, three of the jurors admitted to the judge that they had read the newspaper article. They were dismissed from the panel. A fourth juror told the judge that she had seen only the headline but could not recall what she had read. She specifically stated that the headline would not affect her judgment. The judge concluded that the juror appeared to be candid and honest, a conclusion shared by defense counsel. The judge per-

mitted the juror to remain on the jury.[5] The judge's interrogation of the jurors without the presence of the defendant constituted error. We believe, however, that, in light of the judge's action in dismissing those jurors who had read the article, such error was "harmless beyond a reasonable doubt." *Chapman* v. *California,* 386 U.S. 18, 24 (1967). Further, because there was no objection, we are examining the judge's action under the "substantial risk of a miscarriage of justice" standard. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). There is no such risk in the circumstances of this case.

We reiterate, however, that whenever a judge undertakes to interview a juror about possible juror misconduct, "the defendant's presence is 'crucial as a safeguard of his right to an impartial jury.'" *Commonwealth* v. *Connor,* 392 Mass. 838, 843 n.1 (1984), quoting from *Commonwealth* v. *Robichaud,* 358 Mass. at 302. Therefore, the judge should make sure that the record shows either that the defendant was present, or that he made a voluntary, knowing and intelligent waiver.

*Judgment affirmed.*

---

[5] The judge's action in permitting the juror to remain on the jury is an issue raised by appellate counsel. There was no error. A judge has wide discretion in the circumstances, and there was no abuse of that discretion. *Commonwealth* v. *Theberge,* 330 Mass. 520, 528-530 (1953).