**UNITED STATES of America,**
**Appellee,**

**v.**

**Herbert A. ELLENBOGEN, Appellant.**

**No. 336, Docket 30102.**

United States Court of Appeals
Second Circuit.

Argued April 13, 1966.

Decided Sept. 15, 1966.

Herbert A. Ellenbogen, pro se.

Peter M. Brown, New York City, for defendant-appellant.

Michael S. Fawer, Asst. U. S. Atty. Southern District of New York (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, and John S. Martin, Jr., and Otto G. Obemaier, Asst. U. S. Attys., on the brief), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Samuel DiChellis and the appellant Herbert A. Ellenbogen were indicted for conspiracy to defraud the United States.[1] In the same indictment, the appellant was charged with two counts of bribery of a federal employee [2] and DiChellis was charged with two counts of receiving the bribes from the appellant.[3] DiChellis pleaded guilty to the three offenses for which he was indicted. Ellenbogen was represented by retained counsel and pleaded not guilty. After a trial before the court without a jury, he was convicted on all three counts. He appealed and we reversed [4] and remanded for a new trial because the trial judge had refused to turn over to the defense certain statements made by DiChellis to the F. B. I., to which Ellenbogen claimed he was entitled under the Jencks Act, 18 U.S.C. § 3500. Thereafter Ellenbogen was tried again in a jury trial before Judge Robert L. Taylor of the Middle District of Tennessee, sitting in the Southern District of New York by designation. The jury returned verdicts of guilty on all three counts and a judgment of conviction was entered. It is from this judgment that Ellenbogen appeals. We affirm.

The principal grounds of appeal are, first that the trial judge abused his discretion in refusing applications by defense counsel for continuances both before and during the trial, and second that it was reversible error for the court to admit into evidence certain documents as records kept in the regular course of business and to admit a chart based upon those records. The appellant has raised several other points, only a few of which call for comment.

There was evidence from which the jury could have found the following facts: DiChellis was a purchasing agent, in the General Services Administration, whose duties included the purchasing of cellophane, polyethylene and plastic bags and sacks, as well as packaging materials and plastic sheets. The appellant, Ellenbogen, was president of Allied Converters, Inc., a company which sold packaging materials of cellophane, polyethylene and other substances. In the course of purchasing this kind of commodity DiChellis became acquainted with Ellenbogen about the middle of the year 1960. From that time on, Ellenbogen gave DiChellis various sums of money for the purpose of influencing him to give the appellant's company favorable treatment in procuring such products from the company.

The two bribery counts against Ellenbogen alleged, in count two, that for that purpose he had in 1961 given DiChellis a 1961 Oldsmobile and, in count four, that for a like purpose he had given DiChellis $3000 toward the purchase price of a house. There was ample proof that Ellenbogen had made these gifts and abundant evidence from which the jury could conclude, as it did, that he had done so with the intention of influencing DiChellis in his official capacity with respect to the purchases of cellophane and polyethylene products.

During the period in question the G. S A. provided for two procurement procedures which DiChellis was required to follow. Purchases in amounts exceeding $2500 were made under a term contract with a supplier for the particular G. S. A. region, in this case Region Two. These

---

1. Title 18 U.S.C. § 371.

2. Title 18 U.S.C. § 201.

3. Title 18 U.S.C. § 202.

4. United States v. Ellenbogen, 341 F.2d 893 (2 Cir. 1965).

agreements usually ran for a year and were made with the supplier who was the lowest bidder under a formal bidding system. No fixed quantity was specified but the G. S. A. was obliged to fill all of its requirements for the described commodity from the successful bidder for the life of the contract. At the time Allied Converters, Inc., held such a contract for Region Two to which DiChellis was assigned. The other procedure concerned purchases under $2500 in amount which the purchasing agent could effect by negotiation with local suppliers. For the purpose he would have two to four dealers submit bids in writing on a standard form or he would telephone two to four dealers for oral bids. Whichever method was used, the purchase was made from the lowest bidder. Purchasing agents were kept informed of the amount of a commodity, currently needed, through "buy cards," issued at the end of every week, by an automatic data-processing machine. When a purchasing agent became aware by other means that there was an unusually large demand for a particular item in an earlier part of a week, he was authorized to prepare a "buy card" manually.

With respect to purchases in excess of $2500 under the regional contract, Ellenbogen several tims persuaded DiChellis to order quantities beyond the actual needs of the G. S. A., which left the Government in long supply. Ellenbogen also infuenced DiChellis to award Allied Converters, Inc. over one hundred purchase orders for materials, in separate amounts of less than $2500, which totalled $183,342.82, by the more informal method of a standard bid form or an oral telephone bid. In these instances Ellenbogen was advised of the quotations of the other bidders taken first by DiChellis; and thereupon Allied Converters, Inc. underbid them. There was evidence that on some orders based on telephone bids, no bids by other suppliers were actually given but DiChellis falsely listed arbitrarily selected names.

The first of the major points raised by the appellant concerns the denial of his counsel's requests for continuances. On June 17, 1965 the new trial was assigned for September 7, 1965. About July 15th Edward R. Cunniffe, Jr., Esq., was notified that he had been assigned as defense counsel for Ellenbogen. Mr. Cunniffe accepted the assignment on July 19th and filed his appearance on August 6th. On September 7th he applied for a continuance on the ground that he was not yet ready to proceed to trial. His request for more time was supported by an affidavit in which he stated categorically that he was unprepared to begin trial on that date. Judge Taylor denied the application and ordered the parties to proceed. He assured Mr. Cunniffe that, if it appeared during the trial that counsel was overburdened, the court would exercise its discretion and recess at that time. Counsel thereafter made several applications for continuances during the trial. Each of these was denied. Appellant now contends that the trial court's refusal to grant the motions for a continuance was an abuse of discretion and that this court should reverse his conviction.

 The granting of a continuance is a matter within the discretion of the trial judge, whether the requests are made before the trial, Nilva v. United States, 352 U.S. 385, 395, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957), United States v. Bentvena, 319 F.2d 916, 934–935 (2 Cir.), cert. denied sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963), or during its course, Avery v. State of Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); United States v. Cimino, 321 F.2d 509, 512 (2 Cir. 1963), cert. denied, 375 U.S. 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964). It must be shown that the trial judge acted arbitrarily and substantially impaired defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion. The test is a stringent one. United States v. Bentvena, supra. We recognize however, that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can

render the right to defend with counsel an empty formality." Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). See also Avery v. State of Alabama, supra (counsel appointed less than three days before trial). There is no mechanical test. Whether there was an abuse of discretion "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request [was] denied." Ungar v. Sarafite, supra, at 589, 84 S.Ct. at 850.

The reasons which Attorney Cunniffe gave Judge Taylor, at the time he first asked for the continuance were not particularly persuasive. He simply stated in his affidavit accompanying the motion that he had not had enough time to prepare the case. In his oral argument of the motion he said he had just finished another trial in which he had participated as court appointed counsel but he did not say anything about the amount of time the preparation of that case and its trial had consumed. He also mentioned that he expected to apply for leave to examine documents but specified nothing further about them.

The present appeal was briefed and argued by Ellenbogen *pro se* but at the suggestion of the court, to which Ellenbogen acceded, Peter Brown, Esquire, of the New York Bar was appointed to examine the voluminous record and to file a brief on Ellenbogen's behalf. He performed this task with competence and skill. In connection with the brief he submitted a new affidavit by Attorney Cunniffe, dated June 16, 1966, in which the trial counsel states that on July 27, 1965 he had been assigned by the United States District Court for the Southern District of New York to represent the accused in the case of United States v. Capriola, to which he was required to devote a substantial portion of his time and attention throughout August, 1965.

■ The details presented in Mr. Cunniffe's recent affidavit, however, were not brought to the attention of Judge Taylor in anything more than a very sketchy form. The trial court's exercise of discretion can only be tested in the light of the reasons disclosed at the time the motion was heard and not on the basis of more elaborate representations argued on appeal. Ungar v. Sarafite, supra, at 589, 84 S.Ct. 841.

■ Moreover, it is apparent that Attorney Cunniffe had in his hands, as soon as he was notified of his assignment to the case, the transcript of the first trial. This afforded him a great deal of assistance in knowing the Government's line of attack and the nature of its proof ahead of time and measurably decreased the amount of time ordinarily needed for preparation. In this regard the case is similar to United States v. Bentvena, supra, in which a motion for continuance was denied substitute counsel, assigned sixteen days prior to the day the trial commenced, because it was a second trial and the Government's case was set out in the record of the first trial.

The appellant seeks to meet this by asserting that there were fundamental differences between the Government's presentations in the first and second trials. While Attorney Cunniffe, in advance of the second trial, may have feared a new theory of prosecution and new and additional proof, a comparison of the two trials discloses that any differences were not of major significance. There was no indication of any lack of preparation.

Appellant further complains that he was not given time to examine the "history runs" of the G. S. A. This point was raised on the eighth day of trial in support of a motion for a continuance. He now contends that denial of this motion deprived him of the opportunity to search for evidence which would have weakened the Government's proof and his defense was thereby prejudiced.

■ The "history runs" were continuing records, kept by G. S. A., of the stock on hand of each commodity. The Government had used some of them in connection with DiChellis' testimony concerning the five occasions on which he had given Ellenbogen cellophane orders

under Allied Converters' regional term contract when the Government was already in "long supply" on this product. This evidence was offered to imply that DiChellis would not have purchased any cellophane on these five occasions unless he had been acting under Ellenbogen's influence. Cunniffe wanted to examine the G. S. A. "history runs" in the hope that he would find that a long supply was not uncommon, thereby weakening the implication. The "history runs" were made available to the defense; but the appellant argues that they were very voluminous and that he had only a week-end to examine them along with other documents and that the trial court's denial of additional time was an abuse of discretion.

This case is not analogous to United States v. White, 324 F.2d 814 (2 Cir. 1964), in which, after the Government had put in its case in chief, the defendant raised the issue of entrapment. We held that the trial court's refusal to grant a continuance so that the whereabouts of a known informant, who was a material witness for the defense, could be determined was ground for reversal. There was nothing, in the present case, to indicate that any admissible evidence of this nature existed and the defendant was not denied the right to establish a substantial theory of defense. From the opportunity which was afforded him to examine the "history runs" he produced nothing to show the court that there was at least a likelihood that such evidence was available. In fact, when defense counsel was asked by the court what he actually expected to find from an examination of the "history runs" he replied that he did not know. Under the circumstances there was no abuse of discretion in denying the continuance.

■■ The appellant claims that the trial court erred in admitting into evidence Exhibits 9 and 67. Exhibit 9 was a file containing the records, made by DiChellis, of about seventy-five telephone bids and purchase orders issued to Allied Converters, Inc. between August 31, 1960 and April 27, 1962. It was admitted, over the defendant's objection, under the Federal Business Records Act. No question is raised that DiChellis, as a part of his official function, had a duty to keep such records in the form in which they appeared, nor is it disputed that the purchase orders mentioned reflected actual sales made by Ellenbogen's company to the Government for which the company was paid. The file was qualified as a full exhibit through the testimony of the Regional Chief of the Commodities Section of the G. S. A. The defense objection was addressed to those portions of the records which showed bids of suppliers other than Allied Converters, Inc. The attack was based on the fact that, when DiChellis was put on the stand to explain his making of these records, he testified that a substantial number of the purported telephone bids by such other suppliers were never in fact made by them but were fictitious and were created by DiChellis out of his imagination. It is the appellant's contention that, because the records contained these falsifications, the entire exhibit should have been excluded because admissibility rests upon "the character of the records and their earmarks of reliability * * * acquired from their source and origin and the nature of their compilation," Palmer v. Hoffman, 318 U.S. 109, 114–115, 63 S.Ct. 477, 480, 87 L.Ed. 645 (1943), and because the trial court in admitting such a business record must be sure that it "have an inherent probability of trustworthiness." Central Railroad Co. v. Jules S. Sottnek Co., 258 F.2d 85, 88 (2 Cir. 1958). The reason underlying this emphasis on trustworthiness, however, is that the record, which is hearsay, is by virtue of the statute made admissible, obviating the necessity of putting in the authenticating testimony of the person who actually made the record entries. In the present case DiChellis, who made the record entries, appeared as a witness and testified about them and was subjected to full cross-examination with regard to them. The Government was not endeavoring to foist upon the trier

as true, a record it knew to be false. It would have been preferable if the Government's claim with regard to the records had been made plainer at the time the exhibit was offered, but by the time DiChellis had finished his testimony about them, there was no mistaking the Government's claim and no prejudice to the defendant resulted. Under the circumstances the general principle should be applied that regularly kept business records should be admitted and evidence of matters affecting their credibility should go only to their weight. The fact that certain transactions recorded were tainted with fraud does not render the records inadmissible. United States v. Re, 336 F.2d 306, 313 (2 Cir.), cert. denied 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964). Exhibit 9 was a collection of the actual figures and statements on the basis of which the purchases by G. S. A. from Allied Converters, Inc. were made and on the basis of which they were paid. It was admissible as past recollection recorded. McCormick, Evidence § 280 at p. 595, § 281 at p. 596 (1954). It did not become inadmissible because of DiChellis' explanatory admission that some of the bids as listed were fictitious.

■■■■ Exhibit 67 was a graphic presentation of the contents of Exhibit 9. Appellant claims it was erroneously admitted into evidence because it was based on false and incomplete material and because it was prejudicial. As we hold that Exhibit 9 was properly admitted into evidence there remains only the question whether the presentation by chart was so dramatic and impressive that it was likely to have drawn the jury's attention away from the basic question of the extent to which the contents of Exhibit 9 and DiChellis' testimony concerning it were true and accurate. United States v. Moody, 339 F.2d 161, 162 (6 Cir. 1964); Lloyd v. United States, 226 F.2d 9, 17 (5 Cir. 1955). The admission of charts is discretionary with the trial judge and is subject to review only on a clear showing of abuse and resulting prejudice to the opposing party. United States v. Ber-

nard, 287 F.2d 715, 722 (7 Cir.), cert. denied 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961); Lloyd v. United States, supra, 226 F.2d p. 16. Exhibits 9 and 67 were intended to demonstrate Ellenbogen's consistent ability to put in the low bid, leaving it to the jury to infer that his success was the result of the information given by DiChellis. If DiChellis had admitted that he had falsified the record of purchase orders to indicate that Ellenbogen had been awarded orders when he had not, the chart could indeed have injured the defendant. In that circumstance, it might have been possible for the jury to accept the conclusion shown in the chart and forget that some of the evidence was to the contrary. But in the present case it is undisputed that Ellenbogen's company had received all of the seventy-five orders. What the chart did not show was which of the entries representing bids of competing suppliers were fictitious, but the testimony of DiChellis was that, in those instances in which Ellenbogen's bids were significantly lower than the other bidders', the bids of the others were fictitious but that where his bids were only a few cents lower, the entries were true bids. The trial judge carefully cautioned the jury when Exhibit 67 was admitted into evidence that the chart was only to assist them in understanding the figures and that where there was any conflict between the chart and the underlying data from which it was prepared, the underlying data would control. We are satisfied that there was no abuse of discretion in admitting Exhibit 67.

A few other points raised by the appellant require mention. During the course of the trial defendant decided to discharge his able counsel, Mr. Cunniffe, and moved the court to permit Mr. Cunniffe to withdraw so that the accused could proceed with the trial *pro se*. He now asserts that the trial judge's refusal to allow him to dismiss counsel was error and requires reversal of his conviction.

■■■■ After his trial has commenced, a defendant no longer has complete freedom to change counsel or dis-

charge counsel and proceed *pro se*. United States v. Bentvena, supra, 319 F.2d 935, 938, United States v. ex rel. Maldonado Denno, 348 F.2d 12, 15 (2 Cir. 1965). As stated in United States v. Denno, supra, at 15:

> "There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance."

The record of the trial shows that Ellenbogen was fully and competently represented by Attorney Cunniffe. No valid reason was advanced for seeking his discharge. It is also clear that the dismissal of counsel after four days of trial would have been disruptive. The trial judge did not abuse his discretion in denying Ellenbogen's motion.

Appellant asserts that it was error for the trial judge to excuse, with appellant's consent, a juror who became ill during the course of the trial, and to replace the juror with an alternate. The substitution of an alternate for a juror for reasonable cause is within the prerogative of the trial court and does not require the consent of any party. A party claiming to be injured by such action is entitled to a new trial only on a clear showing of prejudice to him. In the present case the appellant has failed to show any injury or prejudice whatever. See United States v. Houlihan, 332 F.2d 8, 13 (2 Cir.), cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964); United States v. Woodner, 317 F.2d 649, 652 (2 Cir. 1963). This court will not presume prejudice without some plain showing to that effect, United States v. Wood-

ner, supra; United States v. Zambito, 315 F.2d 266, 269 (4 Cir.), cert. denied, 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963).

Appellant also claims that the trial court was in error in denying his motion for arrest of judgment on Count 4 of the indictment for lack of venue in the Southern District of New York because the Government's proof concerning the $3000 down payment on the house placed all elements of the alleged bribe in New Jersey. Although the evidence showed that the house was located in New Jersey, and the discussions connected with its purchase took place in New Jersey, Ellenbogen himself testified that he sent from New York the $3000 down payment check to the builders in New Jersey. There was no bribery until Ellenbogen made the payment by mailing the check from New York. Under Title 18 U.S.C. § 3237 [5] this furnished sufficient basis for venue in the Southern District of New York. Goodloe v. United States, 88 U.S.App.D.C. 102, 188 F.2d 621, 622 (1950), cert. denied 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619 (1951).

The appellant asserts that at the second trial the Government continued to withhold material which he was entitled to examine under the provisions of the Jencks Act, Title 18 U.S.C. § 3500. We have examined the material, which was sealed and marked pursuant to the Act, and conclude that the appellant was not entitled to any of the statements withheld.

The remaining points sought to be raised by the appellant require no discussion. There is no error and the judgment of conviction is affirmed.

---

5. Title 18 U.S.C. § 3237, in pertinent part, provides:
 "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."