**UNITED STATES of America,**
**Appellee,**

v.

**David A. MORTON, Jr., Appellant.**
**No. 72–1662.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1973.

Decided Aug. 15, 1973.

Rehearing Denied Sept. 10, 1973.

Jack L. Lessenberry, Little Rock, Ark., for appellant.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before CLARK, Associate Justice, Retired,* and HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

David A. Morton, Jr., appeals from his convictions of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846, and of aiding and abetting in the distribution of cocaine hydrochloride, on two counts, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. He was sentenced to three years imprisonment to be followed by a three-year mandatory parole period on each count of aiding and abetting and on the conspiracy conviction, the sentences to run concurrently.

Morton urges that he is entitled to a reversal of the convictions on the following grounds:

(1) that it was an abuse of discretion for the trial judge to deny his motions for continuance;

(2) that the trial court erred in admitting certain testimony;

(3) that prejudicial remarks of the Assistant United States Attorney justified the granting of a mistrial; and

(4) that the business record rule was erroneously applied.

## MOTIONS FOR CONTINUANCE

Morton was arrested on January 18, 1972, at which time agents from the Bureau of Narcotics and Dangerous Drugs seized, among other things, research material and record books from the premises of Morton Consultants, Inc., a corporation of which David Morton was the chief officer. By January 26, these records had been copied by the BNDD. The originals were sealed, and most of the copies were turned over to the United States Attorney. On January 31 and March 13, Morton's attorney wrote the Assistant United States Attorney handling the case in an attempt to get the records or arrange to copy them. On February 9, Morton's attorney wrote the Regional Director of BNDD requesting information on the availability of the papers.

At Morton's April 25 arraignment, Judge J. Smith Henley in referring to the records in question, ordered the government to "make them available to [defense counsel] at his convenience any time during the daylight hours." On May 2, Morton filed a Motion for Discovery and Inspection of these records.[1] In a June 20 letter to Judge Henley,

* United States Supreme Court, sitting by designation.

1. The motion was not filed in the two cases now on appeal, but rather in two other cases which were later dismissed. We view that fact as unimportant. The subject of Morton's motion and of the previous requests was the same.

showing a copy to the Assistant United States Attorney; Morton's attorney stated that the papers had still not been made available to him. Finally, on July 7, at pretrial conference, the government furnished the defendant with copies of the records. The defendant moved orally for a continuance at that time, and filed motions for a continuance on July 14 and July 24.

As a chemist, Morton engaged generally in consulting, laboratory and research work. For approximately two years, Morton Consultants, Inc., was engaged in experimentation on the recovery of cocaine and other drugs from horses. Morton contends that if a continuance had been granted by the trial court, the records taken from his laboratory could have been used to aid an expert in duplicating and verifying his experiments with cocaine, thereby proving that he had not participated in the illegal distribution of the drug. The defense theory was that duplication of the experiments by an expert would verify them. The amount of cocaine purchased by Morton Consultants, Inc., could then be compared with the amount used in the experiments and the amount on hand at given points. Although there was not time before trial for verification of the experiments, there was inconclusive testimony by a government accountant attempting to make the comparisons indicated above.

▮ The appellant presents a strong factual case for reversal. The conduct of the Assistant United States Attorney was questionable; the appellant's attorney was presented with a fairly complicated case and a short time to prepare after he received records he deemed crucial to the defense; and the appellant's attorney was diligent in attempting to secure the records and in preparing for

trial. As impressive as the factual record is, however, the appellant has failed to show that a manifest injustice resulted or that his ability to defend himself was substantially impaired[2] by what amounted to the exclusion of (because of lack of preparation time) expert testimony verifying the experiments of Morton Consultants, Inc.[3] Verifying the experiments would not have shown that the experiments were actually performed or that the amount of cocaine recorded as used was actually used. The appellant's expert witness, Dr. Lloyd Seager, testified by deposition that lesser quantities of cocaine could have been used in the experiments, and, in fact, he would have used "much less." A government chemist concurred in that opinion. Notwithstanding the fact that we feel that the appellant has failed to show facts justifying a reversal, it is appropriate to express our concern over the failure of the Assistant United States Attorney to promptly make the records available to the defendant. Such conduct *could* severely prejudice a defendant under a different set of circumstances.

## TESTIMONY OF GENE JARNAGIN

The appellant urges that it was error for the trial court to admit the testimony of government witness Gene Jarnagin. We disagree. Jarnagin was named co-conspirator, but was not a defendant. He was also serving a sentence for a crime alleged by the government to be connected with the conspiracy charge in this case, and a petition to reduce that sentence was pending before a Colorado District Court. In explaining the circumstances of a meeting with James R. Best, Jr., one of the codefendants,[4] Jarnagin indicated that he had met Best to pick up some cocaine. This allegedly

---

2. See, United States v. Collins, 435 F.2d 698, 699 (7th Cir. 1970), cert. denied, 401 U.S. 957, 91 S.Ct. 983, 28 L.Ed.2d 241 (1971) ; United States v. Ellenbogen, 365 F.2d 982, 985 (2nd Cir. 1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967).

3. There are some indications that it may have taken as long as a year to duplicate those experiments.

4. Best had been indicted in both cases and Asa L. Morton, David Morton's son, was indicted only on the conspiracy charge. The cases were consolidated for trial.

took place some eight months before the charged beginning date of the conspiracy, and seventeen months before the date of the first substantive charge.

■■ Previous acts of a co-conspirator may be admissible against a defendant once a prima facie case of conspiracy is proved when such previous acts show the nature and objectives of the conspiracy. See, United States v. Santos, 385 F.2d 43, 45, 46 (7th Cir. 1967), cert. denied, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148 (1968); United States v. Hickey, 360 F.2d 127, 140 (7th Cir.), cert. denied, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966). That standard is applicable here because the government sought to prove a continuing association among the conspirators involving a number of illegal drug transactions.

■ The appellant argues further that even though the testimony may have been admissible in the conspiracy case, it was not relevant to the aiding and abetting case unless it was to show a "course of conduct, intent and the like." In addition, he argues that since the trial judge did not give an appropriate limiting instruction as to the aiding and abetting case, reversal is required. Again, we disagree. "The law is settled that reversal is not required if the conviction underlying any one of several concurrent sentences is valid and alone supports the sentence and judgment. * * *". Kilcrease v. United States, 457 F.2d 1328, 1331 (8th Cir. 1972) (Citations omitted.). Accord, United States v. Irby, 480 F.2d 1101 at 1102 (8th Cir. 1973). There is no reason not to apply that rule in this case. We perceive no prejudice in the alleged error, Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), and there has been no showing that "* * * adverse collateral legal consequences might flow from a failure to rule on [this] allegation. * * *" Kauffmann v. United States, 414 F.2d 1022, 1025 (8th Cir. 1969), cert. denied, 397 U.S. 962, 90 S.Ct. 995, 25 L.Ed.2d 254 (1970).

## REMARKS OF ASSISTANT U. S. ATTORNEY

On direct examination of government witness, Guy Preston Biggs, another co-conspirator who was not indicted, the record reflects the following:

"MR. CARPENTER: If the Court please, I represent Mr. Biggs.

"THE COURT: Let the record show that Mr. Claude Carpenter, who represents Mr. Biggs, as an attorney, asks to be heard.

"MR. CARPENTER: At this time, if the Court please, since Mr. Biggs has been named as a co-conspirator but not made a co-defendant, there is a possibility that some other charges will be filed against him arising out of this series of events. With that in mind, I am asking the Court to allow us to take the Fifth Amendment at this time.

"MR. RIDDICK: If the Court please, for the purpose of completing the record, I can state that the United States attorney's office has no intention of further prosecuting this man so long as he either takes the Fifth Amendment or tells the truth, but I do not have any authority to move the Court for statutory grant of immunity.

"MR. CARPENTER: Do I understand, Mr. Riddick, you say if Mr. Biggs proceeds to testify and tells the truth, that he has the authority from this office, this U. S. District Attorney's office, to state in open court here that they will not file any additional charges against Mr. Biggs arising out of this series of incidents? Is that my understanding?

"THE COURT: That's the way I understand, Mr. Riddick.

"MR. RIDDICK: I have no authority to speak for anybody except the present United States Attorney's office. We have no intent to proceed further against him.

"MR. CARPENTER: How much longer does his term run?

"MR. RIDDICK: I have not the foggiest notion—about three years I think but I'm not sure. Of course, he might be out by tonight."

The defendant then lodged an objection and moved for a mistrial. Carpenter conferred with his client and withdrew the request to invoke the Fifth Amendment. The trial court denied the motion for a mistrial, and the Assistant United States Attorney resumed direct examination of Biggs the next day.

The appellant contends that it was error for the trial judge to deny the motion for a mistrial. He argues that the comment of the Assistant United States Attorney was extremely prejudicial in that he conditioned further criminal prosecution of Biggs on the truthfulness of his testimony. That bargain in open court, the appellant argues, implied that the United States Attorney knew what the truth was and effectively "raised" the credibility of the witness.

We are first of all convinced that this incident was not the result of a planned strategy by the Assistant United States Attorney. It was triggered by an attorney's effort to protect his client in open court when it would have been more appropriate to approach the bench and raise the issue out of the presence of the jury.

The testimony of Biggs was, in fact, adverse to the defendant, and the jury may have concluded that he was under pressure to testify truthfully and, thus, tended to give that testimony additional weight. On the other hand, the jury may have concluded that Biggs was under pressure to say what the government wanted to hear; and as a result, viewed his testimony with more suspicion than it would have had the incident not occurred. Assuming, however, the validity of the first proposition, we do not view the trial court's denial of the motion for a mistrial as reversible error.

## BUSINESS RECORDS RULE

The appellant's contention that records introduced through the testimo-ny of several witnesses did not meet the requirements of 28 U.S.C. § 1732 is without merit. Lack of personal knowledge by the witnesses concerning entries in certain of the challenged motel records goes to their weight and not their admissibility. United States v. Bass, Jr., et al., 472 F.2d 207 at 213 (8th Cir. 1973).

The government's motion for an order withdrawing this Court's appointment of counsel and refund of $1,744.40 paid the court reporter for an original and one copy of the transcript of the District Court proceedings is granted.

Affirmed.