Patricia Kozel PARKER *v.*
STATE of Arkansas

CR 80-135                              606 S.W. 2d 746
Supreme Court of Arkansas
Opinion delivered October 27, 1980

898

*Paul Johnson*, for appellant.

*Steve Clark*, Atty. Gen., by: *Jack W. Dickerson*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was convicted on two counts of theft of property in violation of Ark. Stat. Ann. § 41-2203 (Repl. 1977). She was sentenced by the jury to 30-year sentences on each count, and the court ordered them served consecutively.

Appellant argues four points for reversal: (1) the court erred in failing to send copies of the instructions with the jury into the deliberation room; (2) the court erred in refusing to allow any reference to the term "sodium amytal interview;" (3) the court erred in admitting certain exhibits into evidence; and (4) the verdict was contrary to the evidence and law, and the evidence was not sufficient to support the verdict.

The facts reveal the appellant, or someone resembling her, opened a business checking account at the First American National Bank in the name of Lil Vending Machine Company. The person opening the account gave her name as Lillian Dickerson. She was subsequently identified, by the bank employee who opened the $10 account, as Patricia Kozel Parker. The account was opened on September 22, 1977. At that time a signature card was signed on the Lil Vending Machine account by a person who used the name Lillian Dickerson. During the trial this bank employee, Michael Landers, postively identified the appellant as the person who opened the account.

Another employee of the bank, Linda Johnson, tesified

she thought the appellant was the same lady who came into a branch bank on September 29, 1977, and deposited three checks totaling $19,900 to Lil Vending Machine account and at the same time cashed a $10,000 check. The check which was cashed was payable to 1st American National Bank on the Lil Vending Machine account. This witness did not see the person transacting the business prepare the check or sign any of the papers. The witness stated "if this was the only $10,000 check cashed that day it must be the one I cashed for this party." The deposit slip for the $19,900 was introduced as State's Exhibit No. 3, and the three checks in the deposit were marked State's Exhibit Nos. 4, 5 and 6. The witness was not absolutely positive in her identification of the appellant.

Another bank employee, Kathy Howard, positively identified the appellant as the person who deposited $23,900 to Lil Vending Machine account on September 30, 1977, and at the same time withdrew $11,000 by way of a check on Lil Vending Machine account payable to 1st American National Bank. The witness identified the deposit slip, and it was introduced as State's Exhibit No. 8 and the three checks in the deposit of $23,900 as State's Exhibit Nos. 9, 10 and 11. The state introduced Exhibit No. 12 as the check cashed by appellant. The witness could not definitely identify Exhibit No. 12 but stated it was the same amount of the one cashed and the same maker and payee.

Melissa Mayer, another employee, testified she was on duty at the main branch of the bank on October 6, 1977, when appellant brought the deposit book for Lil Vending Machine to her window with a deposit consisting of three checks totaling $25,290. The appellant also attempted to cash another check on that date. Upon request for identification the appellant stated she would have to go to the car to obtain it. She left in a hurry leaving behind the deposit book and the check she was trying to cash. She never returned to the window. This deposit slip was marked State's Exhibit No. 13. This witness also positively identified the appellant as the person who was at her window on October 6, 1977. All three deposit slips were still in the book she left at the window.

The state called John Wiseman, Vice President Cashier at First American National Bank, who described his duties at the bank to include investigations of matters such as are in question here. All of the checks deposited to Lil Vending Machine account were returned for insufficient funds or accounts closed. Wiseman made an investigation of this account and in the course of his duties prepared a list of the checks deposited to the account and a list of the checks cashed on the account. These were introduced as State's Exhibit Nos. 14 and 15, respectively. The deposits amounted to some $58,000, and the withdrawals amounted to an excess of $21,000. The witness stated these lists were prepared in the course of his duties and for the purpose of making a claim against the bonding company. Appellant timely objected to all of the exhibits and the lists compiled by witness Wiseman.

The defense filed a motion in limine to prevent the state from referring to the term "psychosis" in relation to the defense of mental disease or defect. The court overruled the motion and stated the term "psychosis" was a word of art. The state then moved to prevent appellant from referring to a sodium amytal interview of appellant by psychiatrists or psychologists. The appellant desired to use the sodium amytal test results for the purpose of relating the type of examination given and to show that it was a proper diagnostic test. Appellant did not seek to introduce the results of the sodium amytal test to show the truth of the matter stated but only as a diagnostic procedure used in testing the appellant. The court eventually ruled there could be no reference to the sodium amytal interview. However, several doctors testified, in chambers, the test had been used for many years and was at the time of the trial a recognized diagnostic tool by the American Psychiatric Association although it was not in the desk handbook as such when the appellant was examined. The psychiatrists and psychologists were split in their opinion as to the appellant's mental state. Three defense witnesses testified the appellant was suffering from hysterical neurosis, dissociative type, manifesting itself in the nature of "multiple personality." Appellant contended it was her alter ego, Pam Lease, who did all these things. These witnesses, who relied upon the sodium amytal interview for diagnostic purposes, felt the appellant was unable

to appreciate the criminality of her conduct or reform her conduct to the requirements of the law. The state psychiatrist felt she was malingering and was without psychosis.

Before closing arguments commenced, the appellant's attorney requested the court to send all instructions into the jury room in typewritten form. The court refused the request but told the attorney he could tell the jury, in his closing argument, that they could request the instructions be taken into the room by asking the judge for them. Since the closing arguments are not abstracted, we are unable to determine whether such information was relayed to the jury.

We first consider the argument that the court erred in failing to send typewritten copies of the instructions into the jury deliberation room. This matter is governed by the Rules of Criminal Procedure, Rule 33.3, which reads:

> In the trial of all cases in courts of record wherein juries are employed, upon request of counsel for any party, or of a juror, it shall be the duty of the presiding judge to deliver to the jury immediately prior to its retirement for deliberation, a typewritten copy of the oral instructions given to the jury. The instructions shall be returned to the court by the foreman of the jury when the jury is dismissed.

We have not previously been called upon to interpret this rule. Therefore, we interpret it to mean exactly what it says. Since it is the expressed duty of the court to deliver the typewritten instructions to the jury prior to its retirement, when requested to do so, as the case here, we hold it to be prejudicial error for the court to fail to do so.

The second argument presented by appellant is the court erred in excluding any reference to the sodium amytal interview conducted by appellant's doctors. This case is no different from most others when the defense of mental disease or defect is raised when psychiatrists and/or psychologists are called to testify on each side. The conclusions are almost always in direct conflict. This was the case here. In such cases cross-examination is extremely important to the defense.

Douglas A. Stevens, Ph.D., clinical psychologist, performed a sodium anytal interview with appellant but was prevented from testifying to this fact by the court. Dr. W. R. Oglesby, psychiatrist with the State Hospital, testified the appellant was "malingering and hysterical neurosis of the dissociative type." It appears that Dr. Oglesby recognized the sodium amytal interview was a useful tool in the diagnostic process in cases such as the appellant presented. There is no question but that the American Psychiatric Association has acknowledged this test to be a useful diagnostic tool. The court, by rejecting any reference to sodium amytal interview, severely limited the appellant's ability to cross-examine the state's witnesses.

In view of the fact that the sodium amytal interview was merely one of the diagnostic tools used in reaching the conclusions by the various witnesses, we feel it was prejudicial error to refuse any reference to the sodium amytal interview. There was no request by the appellant to introduce the interview as such or to use the interview for the purpose of showing the truth of the matter stated therein. She was obviously following the reasoning in *People* v. *Cartier*, 51 Cal. 2d 590, 335 P. 2d 114 (1949); and *People* v. *Lara*, 12 Cal. 3d 903, 117 Cal. Rptr. 549, 528 P. 2d 365 (1975). Since there is no other proper way to refer to such interview other than a sodium amytal interview, we feel it was prejudicial error to refuse to allow any reference to the test for cross-examination purposes. We are not willing to go as far as the California courts have in allowing the sodium amytal test to be inquired about on direct examination.

The third point argued by appellant is that certain items were improperly introduced into the record. We have given a description of the various exhibits claimed to have been improperly introduced in the facts section of this opinion. We will not describe each of the exhibits in detail at this point in the opinion. However, we will note the charge in the present case is one of theft of property and not a hot check charge. It is undisputed by both parties that records regularly kept in normal business procedures would be admissible under Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 803(6). This rule reads as follows:

Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The exhibits prepared by witness Wiseman were not shown to have been kept in the regular course of business. As the record stands, they were prepared for a specific purpose, and there was no foundation to prove such records were kept in the regular course of business. Due to the fact that on retrial the exhibits may not be presented in the same manner, we will not attempt to state whether each and every one of them will be properly introduced at the next trial. We note in the case of *Hale* v. *State*, 252 Ark. 1040, 483 S.W. 2d 228 (1972), that the trial court refused to allow a card to be introduced into evidence because it could not be properly authenticated. However, it was shown the card was signed by an officer who kept such records in the ordinary course of business. In reversing the conviction in that case we stated:

> The card should have been admitted in evidence. Our statute, which was copied from a federal act, allows a business record to be introduced as proof of a transaction or occurrence if the record was made in the regular course of business at the time of the event or within a reasonable time thereafter. The statute recites that all other circumstances relating to the record reflect its weight not its admissibility.

See also *United States* v. *Morton*, 483 F. 2d 573 (8th Cir. 1973).

904

In view of the fact that the case is being reversed for the reasons stated above, we will not comment further on the sufficiency of the evidence because we cannot be certain what evidence will be introduced at the next trial or whether a proper foundation will have been laid for the introduction of the exhibits.

Reversed and remanded.

STROUD, J., dissents.