Raymond CHILDS, Petitioner,

v.

Victor HERBERT, Superintendent, Respondent.

No. 99 CIV. 4580(VM).

United States District Court, S.D. New York.

May 7, 2001.

Andrea G. Hirsch, New York, NY, for the Petitioner.

Peter Coddington, Chief Appellate Attorney, Office of the District Attorney, Bronx County, Bronx, NY, for the Respondent.

## DECISION AND ORDER

MARRERO, District Judge.

Raymond Childs ("Childs"), incarcerated and represented by counsel, petitions for a writ of habeas corpus under 28 U.S.C. § 2254, attacking his 1994 New York State convictions for murder and robbery. Childs argues that the trial court violated his Sixth Amendment right to counsel and Fourteenth Amendment right to equal protection when it denied his original court-appointed counsel's request for a continuance and appointed new counsel just weeks before trial. Childs also moves to amend his habeas petition to add a claim that he was denied equal protection when the Supreme Court of the State of New York, Appellate Division, First Department, denied his appellate attorney remuneration for work related to this habeas petition.

For the reasons set forth below, both the § 2254 petition and the motion to amend are denied.

## FACTS AND PRIOR PROCEEDINGS

In 1994, Childs was convicted in New York State Supreme Court, Bronx County (Sheindlin, J.), after a jury trial, of the 1992 murder and robbery of David Schwartz ("Schwartz"), a prominent Manhattan attorney. *See* Affidavit of Lisa Cuevas (Counsel for Respondent) in Opposition ("Cuevas Aff.") ¶ 5. Childs testified at trial that he had met Schwartz the night before the murder. According to Childs, the two socialized much of the following day, visiting Schwartz's Connecticut home, shooting pool, and running errands together. Childs testified that Schwartz lured him to a Bronx motel, promising that they were to meet some friends and "get some girls." Instead, once at the motel, Schwartz made several unwelcome sexual advances. Childs, eighteen at the time, feared being raped by the stronger Schwartz and in a state of "frenzy" stabbed him twenty-seven times. Childs then left the motel room with Schwartz's wallet, credit cards, and car keys. Over the next few days, Childs made several purchases with Schwartz's credit cards. *See generally* Trial Transcript ("Tr.") at 1220–1308 (Childs's testimony).

### *Substitution of Counsel and Denial of Continuance*

Roughly three weeks before the trial was scheduled to begin, Childs's court-appointed attorney, Joel Peister ("Peister"), informed the trial court that his recurring arthritis was inflamed and could hinder his representation of Childs at trial. *See* Cuevas Aff. ex 14 (Calendar Call Transcript ("Cal.Tr.")) at 3. The court therefore assigned another attorney from the homicide panel, Larry Sheehan ("Sheehan"), to assist Peister. About ten days later, one week before trial, Peister requested a one-month adjournment, explaining that his arthritis had worsened and would prohibit

him from sitting in a courtroom all day and working nights, as trying the case would entail. Cal. Tr. at 3. He gave no assurance that he would be well enough to try the case after thirty days, but argued that the continuance should nevertheless be granted because he had been preparing for eighteen months, the case was complex and highly publicized, and he and Childs had developed a "close relationship." Cal. Tr. at 3–8.

Justice Sheindlin denied the request for a continuance and relieved Peister. When Peister objected, asserting that "no harm" would come from the continuance, the court replied that the case had been pending for eighteen months and that further delay would indeed harm "the system." Peister retorted that the prosecution and another judge were responsible for much of the delay, but Justice Sheindlin reminded counsel that the court had just a week earlier sought to avert any disruption from counsel's ailment by assigning Sheehan to assist. Peister then told the court that Childs wished to personally make a statement regarding his representation, and the following colloquy transpired:

> The Court: He has no choice in the matter, sir. I'm not interested in what he wants.
>
> Mr. Peister: He has the right to counsel of his own choice.
>
> The Court: He does? Yes, he does. Let him hire one. Does he want to hire you, sir?
>
> Mr. Peister: I'm sure he wishes he could.
>
> The Court: Let him hire you. If he doesn't have a way to hire a lawyer, he doesn't have a right to choose his lawyer. I will hear him.

Cal. Tr. At 7. After hearing from Childs, who said he did not want a new attorney, Justice Sheindlin reiterated his ruling and set the case down for a pre-trial suppres-

sion hearing in two days. Cal. Tr. at 8. Peister did not argue that any continuance was necessary to enable Sheehan to prepare for the hearing or trial. In fact, Peister said that he had anticipated the court's ruling and had already handed over almost the entire case file to Sheehan. Two days later, a pre-trial suppression hearing went forward with Sheehan representing Childs. Brief in Support of the Petition ("Pet.") at 6–7. One week after Peister had been relieved, the trial commenced, again with Sheehan representing Childs. Pet. at 7. At no time did Sheehan move for a continuance or assert that he was not prepared to represent Childs.

The jury, rejecting an extreme emotional disturbance ("EED") defense, found Childs guilty of felony murder and robbery. Tr. at 1514–1519. Childs is now serving concurrent prison terms of from twenty-five years to life on the murder conviction and eight and one-third to twenty-five years on the robbery conviction. *See* Cuevas Aff. ¶ 5.

*Appeal and Collateral Attack*

On direct appeal, Childs was represented by Andrea G. Hirsch ("Hirsch"), appointed under Article 18–B of New York County Law § 722 ("18–B"). Childs unsuccessfully argued, among other things, that he was denied his right to counsel of choice and equal protection when the trial court relieved counsel and denied the continuance. *See* Cuevas Aff. ex. 1 (Brief for Defendant–Appellant). Childs also filed a supplemental *pro se* brief on appeal, which, if read liberally, asserts among other things that the newly assigned counsel provided constitutionally ineffective assistance in his presentation of the EED defense. *See* Cuevas Aff. ex. 3 (Appellant's Pro-se Supplemental Brief).

The Appellate Division, First Department affirmed the conviction, holding that

the trial court had permissibly removed counsel:

> The obvious concern of the trial court ... was the possible delay in the trial that might result from assigned counsel's physical ailment. The record justifies the court's concern. Although assigned counsel requested a 30–day adjournment, he did not provide the court with any reasonable assurance that he would be ready to try the case at that time. Nor was there any objective basis to conclude that counsel would timely recover. He admitted being "ill" for months and stated that lately his condition had been "getting worse." As the case was 18 months old, and there were no indications when counsel would recover, we find that the necessary "overriding concerns of fairness and efficiency" existed to substitute assigned counsel on the eve of trial.

*People v. Childs,* 247 A.D.2d 319, 670 N.Y.S.2d 4, 10 (quoting *People v. Knowles,* 88 N.Y.2d 763, 769, 650 N.Y.S.2d 617, 673 N.E.2d 902 (1996)) *leave to appeal denied* 92 N.Y.2d 849, 677 N.Y.S.2d 79, 699 N.E.2d 439 (1998). The court was silent as to the equal protection claim and the *pro se* argument regarding ineffective assistance of counsel.

In June 1999, Childs filed this timely § 2254 petition. Hirsch submitted a voucher to the appellate division seeking compensation for work related to this petition, but it was denied because her work was performed "in contemplation of a federal writ." Declaration of Andrea Hirsch, dated October 7, 2000 ("Hirsch Decl.") ¶¶ 2,3. Childs then applied to this Court for Hirsch to be appointed as counsel under the Criminal Justice Act. Hirsch. Aff. ¶ 7. Judge Koeltl denied the request, holding that the petition did not meet the threshold requirement of likely merit. *See* Order dated 8/13/99 (citing *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir. 1989) (stating standard for appointment of counsel)). Nevertheless, Hirsch continues representing Childs *pro bono.*[1]

*Habeas Claims: Denial of the Rights to Counsel and Equal Protection*

Child argues, as he did on direct appeal, that the trial court violated his rights to counsel and equal protection by replacing assigned counsel so shortly before trial and denying the continuance. Childs avers

---

1. The status of Childs's representation bears clarification. When this petition was filed in June 1999, the "civil cover sheet"—a form required by the Clerk of Court for the purpose of initiating the civil docket sheet—was signed by Andrea Hirsch as counsel of record for petitioner. Childs alone signed the petition itself, but Hirsch submitted the brief in support of the petition. In November 1999, after the application for appointment of counsel was denied, Hirsch filed a notice of appearance. On February 14, 2000, Hirsch wrote the Court to "clarify the status" of her representation, and explained that though she had undertaken *pro bono* representation of Childs, "upon reflection ... [she] concluded that Mr. Childs is at least entitled to representation paid for by the state." Hirsch did not expressly ask to be relieved, and this Court did not construe her letter as such a request.

Local Civil Rule 1.4 provides that an attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave. Moreover, such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal and the posture of the case, including its position on the calendar. To date, Hirsch has not filed the required affidavit in support of withdrawal and no court order has relieved her as counsel. She has submitted correspondence, a brief, and a motion with the Court on behalf of Childs, and this Court, the Respondent, and Hirsch herself have proceeded as if she were representing Childs. Accordingly, Hirsch remains counsel of record for petitioner. To the extent Hirsch has sought to withdraw, her request is denied.

that the trial court denied the continuance because he was indigent, and that had he hired counsel, the continuance would have been granted. In this petition, Childs does not claim, as an independent basis for federal habeas relief, that his replacement counsel was constitutionally ineffective.

Childs also seeks to amend his § 2254 petition to add another equal protection claim based on the appellate division's denial of Hirsch's voucher. See Hirsch Decl. ¶ 6. Childs argues that habeas petitioners who are represented by the Legal Aid Society ("Legal Aid") receive fully compensated representation in federal habeas proceedings pursuant to a contract between Legal Aid and the City of New York, whereas similarly situated petitioners represented by 18–B attorneys do not receive state-funded representation.

## DISCUSSION

### A. DENIAL OF CONTINUANCE AND DISMISSAL OF COUNSEL

■■ In general, broad discretion is granted to a trial court's decision to grant or deny a continuance. See Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). When a denial of a continuance forms the basis for a habeas claim, the petitioner must show not only that the trial court abused its discretion, but also that the denial was so arbitrary and fundamentally unfair that it violated constitutional principles of due process. See Ungar at 589, 84 S.Ct. 841; United States v. Ellenbogen, 365 F.2d 982, 986 (2nd Cir.1966); Hicks v. Wainwright, 633 F.2d 1146, 1149 (5th Cir.1981); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir.1975). The Supreme Court has cautioned, however, that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." Ungar at 589, 84 S.Ct. 841.

■■ Where a continuance is sought to retain or replace counsel, the right to choose counsel must be carefully balanced against the public's interest in the orderly administration of justice. See United States v. Burton, 584 F.2d 485, 490 (D.C.Cir.1978). While indigent defendants have no right to choose their appointed lawyer, see United States v. Mills, 895 F.2d 897, 904 (2d Cir.1990), once counsel is assigned, the Sixth Amendment right to counsel of choice attaches and counsel may not be removed arbitrarily. See Fuller v. Diesslin, 868 F.2d 604, 607 (3d Cir.1989).

The Supreme Court's holding in Morris v. Slappy, 461 U.S. 1, 5, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) is instructive in guiding an assessment of arbitrariness in the context of a request for a delay of trial. There, the Court concluded that the trial court did not abuse its discretion or deny defendant's right to counsel when it denied his mid-trial motion for a continuance to allow better preparation by his attorney, who had been appointed to represent petitioner just six days prior to trial after petitioner's originally appointed counsel was hospitalized for emergency surgery. Morris, 461 U.S. at 5, 103 S.Ct. 1610. The Supreme Court, in reversing the circuit court's grant of habeas, noted that petitioner's new counsel had repeatedly assured the court of his readiness, a claim that was reinforced by his securing a hung jury on two of the most serious charges against the petitioner in his first trial. Additionally, the Supreme Court found that the petitioner's repeated and "contumacious" requests for his original attorney were veiled attempts at delaying the trial. Id. at 12, 103 S.Ct. 1610. The Court also held that the circuit court had improperly extended the Sixth Amendment's reach to guarantee a "meaningful relationship" between an accused and counsel. Id. at 14, 103 S.Ct. 1610.

■ Determining what is a reasonable delay necessarily depends on all the surrounding facts and circumstances. *See United States v. Burton,* 584 F.2d 485, 490 (D.C.Cir.1978). In this connection, the District of Columbia Circuit has delineated several factors to consider:

(1) the length of the requested delay; (2) whether other continuances have been requested and granted; (3) the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; (4) whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived, whether the defendant contributed to the circumstance which gives rise to the request for a continuance; (5) whether the defendant has other competent counsel prepared to try the case, including the consideration of whether other counsel was retained as lead or associate counsel; (6) whether denying the continuance will result in identifiable prejudice to the defendant's case, and if so, whether the prejudice is of a material or substantial nature; (7) the complexity of the case; and (8) other relevant factors which may appear in the context of any particular case.

*Id.* at 490; *accord United States v. Cicale,* 691 F.2d 95, 106–07 (2d Cir.1982).

In *Linton v. Perini,* 656 F.2d 207 (6th Cir.1981), the Sixth Circuit granted a habeas petition, holding that the trial court had abused its discretion and arbitrarily denied petitioner's request for a continuance. Petitioner's originally retained counsel had requested a one-month continuance due to obligations which prevented him from properly preparing for the case as scheduled. The court denied the request. Counsel withdrew and the court appointed another lawyer, who immediately moved for a continuance. This request was also denied, as was counsel's renewed motion on the day of trial. The petitioner was ultimately convicted.

The court of appeals held that the trial court had acted arbitrarily. Applying the *Burton* factors it found that (1) the two- to three-week delay was reasonable given the complexity of the case; (2) this was the defendant's first request for a continuance; (3) there was no evidence that the request would be an inconvenience to the parties or any witnesses; (4) no evidence suggested that the defense was using the request as a scheme to delay the trial; (5) prior counsel had withdrawn, leaving no one to try the case; (6) according to *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), harmless error tests did not apply to the deprivation of a procedural right so fundamental as the right to counsel; (7) the case was quite complex, involving five serious felony counts along with an issue about the credibility of witnesses, requiring the new attorney to investigate the complainant's background.

The court concluded that the denial of the continuance violated the petitioner's Sixth Amendment right to have retained counsel represent him, and stated that "where the request is reasonable, where there have been no prior adjournments, where the length of delay is moderate, and where the adjournment seems to be for legitimate reasons, the court should allow a reasonable adjournment...." *Id.* at 209.

■■ Here, Childs requested a month-long continuance for a seemingly legitimate reason—his attorney's health. But the reasonableness of this request must be weighed against the absence of any assurance that counsel would be able to proceed after the adjournment. Childs's trial involved felony charges and complex issues which required the attorney to have extensive knowledge of Childs's personal history, but Childs's replacement counsel, upon assuming his role as lead counsel, did not

move for a continuance. Nor did he object to the timing of the suppression hearing or the trial, or state that he was unprepared to proceed as scheduled. It may be presumed that, after eighteen months of preparation, Childs's original attorney was more knowledgeable about the case and better prepared for trial than his substitute. But the measure of due process is not taken strictly by the numbers. Replacing a long prepared but ailing attorney with an able though hastily prepared attorney does not in itself equate to ineffective representation that offends due process.

■ Whatever this Court may have decided had it been considering the issue *de novo*, the trial court's decision does not violate due process unless it was arbitrary. *See Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978). Justice Sheindlin did not deny the continuance or dismiss counsel without justifiable reason. The case had been pending for eighteen months already, frustrating the interests of the defendant, the relatives of the victim, and the public in a speedy resolution. Attempting to maintain the orderly administration of justice and avert further delay, yet safeguard the defendant's right to be represented by able counsel, Justice Sheindlin appointed counsel to assist Peister two weeks prior to the request for a continuance and three weeks prior to trial. Peister ultimately could not proceed with the trial as scheduled, but the court had prepared for this very exigency. While under some circumstances this Court may view a thirty-day adjournment in a serious felony case as modest, *see, e.g., Linton*, 656 F.2d at 211; *United States v. Scopo*, 861 F.2d 339 (2d Cir.1988) (court did not err in denying counsel a four-month continuance), it cannot characterize the trial court's ruling here as so arbitrary as to deny petitioner his right to due process. Arbitrariness in connection with a denial of

a continuance cannot be gauged in a vacuum, merely by mechanical reckoning of the number of days requested. Thirty days may mean far more to an attorney who comes into a case entirely unfamiliar and unprepared than it does to another, such as replacement counsel here, who has already expended three weeks on the matter, who had anticipated the contingency and had prepared for it, and who had the experience of a week as lead attorney and did not himself manifest feeling so unready as to prompt his own request for a continuance. Justice Sheindlin was within his discretion to relieve Peister and deny the continuance under the circumstances.

Childs makes much of the trial court's failure to expressly consider the D.C. Circuit's *Burton* factors, but *Burton* binds neither Justice Sheindlin nor this Court, and as the Supreme Court noted in this regard, there are no mechanical rules to determine when a denial of a continuance violates due process. *See Ungar*, 376 U.S. at 589, 84 S.Ct. 841. Rather, "the answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.; accord Ellenbogen*, 365 F.2d at 986.

■ Childs argues that the trial court's denial of the continuance and dismissal of counsel not only violated his Sixth Amendment's right to counsel, but also his Fourteenth Amendment's right to equal protection. He points to the trial court's remarks regarding his ability to hire counsel as proof that it would have granted the continuance if counsel were hired rather than appointed, and therefore that the Court denied his right to equal protection under the law. He argues that the implication of the trial court's comment was precisely what the Supreme Court decried in *Powell v. Alabama*, 287 U.S. 45, 57–58, 53 S.Ct. 55, 77

L.Ed. 158 (1932), and that counsel here was discharged "at such time or under such circumstance as to preclude the giving of effective aid in the preparation and trial of the case." *Id.* at 71, 53 S.Ct. 55.

Read in isolation, the colloquy Childs cites may suggest, as Childs asserts, that the trial court acted with animus toward him because of his indigency. Read in context, however, the comment appears at worst to have been an acerbic, if perhaps excessive, retort during an exchange where Childs's attorney steadfastly advocated for the continuance after the Court had already denied the request. Prior to this comment, the court had stated to Childs's attorney, "[y]ou have my complete sympathy. I'm sorry that you are not feeling well, but you are not capable of trying this case alone. I appreciate that and I'm sorry for it, so, therefore, sir, the answer to the problem is you are respectfully relieved." Cal. Tr. at 5.

 Childs does not raise a constitutionally ineffective assistance claim in his petition, but he does indeed aver that replacement counsel was ineffective in his presentation of Childs's EED defense. This argument forms part of Childs's analysis with respect to whether the denial of a continuance and replacement of counsel caused him prejudice. This Court need not reach the issue directly and declines to do so. First, the denial of the right to counsel is not subject to harmless error analysis. *See, e.g., Fuller,* 868 F.2d at 609; *United States v. Panzardi Alvarez,* 816 F.2d 813 (1st Cir.1987); *Linton,* 656 F.2d at 212; *Burton,* 584 F.2d at 491 n. 19. So even if this Court had determined that Childs's right to counsel had been violated, it is academic whether the replacement of counsel in turn caused him any prejudice at trial. Second, Childs did not place the question directly before this Court for consideration as part of his habeas petition—it

is simply not presented here as an independent claim.

Accordingly, for the reasons stated above, the Court denies Childs's petition claiming that his rights to counsel and equal protection were violated by the trial court's denial of his request for a continuance of the trial and replacement of counsel.

**B. *PETITIONER'S MOTION TO AMEND***

 Childs's equal protection claim based upon the appellate division's denial of his 18–B appellate attorney's request for remuneration lies at one of the many intersections of the federal habeas corpus statute, 28 U.S.C. § 2254, and the Civil Rights Act, 42 U.S.C. § 1983. Both "provide access to a federal forum for claims of unconstitutional treatment at the hands of state individuals." *Heck v. Humphrey,* 512 U.S. 477, 480, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The two statutes differ, however, in their scope and operation. The habeas statute provides that a district court shall entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Preiser v. Rodriguez,* 411 U.S. 475, 486 n. 7, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("traditional meaning and purpose of habeas corpus [is] to effect release from illegal custody"). Hence, for all practical purposes, federal habeas corpus relief is limited to claims that the state court proceedings leading to the petitioner's detention were tainted with federal constitutional error.

 Historically, petitioners who asserted constitutional errors in collateral proceedings were heard through habeas petitions, even when the habeas requests

did not directly attack the petitioner's detention. *See Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.1996) (per curiam) (citing *Lane v. Brown,* 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961)). The modern approach, however, precludes the use of habeas to redress procedural errors in collateral proceedings. *See Franza v. Stinson,* 58 F.Supp.2d 124, 151 (S.D.N.Y.1999) (citing cases); *Ortiz v. Stewart,* 149 F.3d 923, 939 (9th Cir.1998); *Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir.1999); *Williams–Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir.1990). Courts now take the view that "habeas relief is only available to address errors at trial, and thus possible infirmities in post-conviction proceedings do not raise constitutional issues that are cognizable in a petition for habeas relief." *Banks v. People,* 1994 WL 661100 (S.D.N.Y.1994) (citing *Williams–Bey v. Trickey,* 894 F.2d 314, 316 (8th Cir.1990)).

Childs is in custody because of his conviction of state crimes. The equal protection claim he now seeks to add to his habeas petition does not allege any constitutional flaw in the prosecution, trial, or direct appeal of his case. If successful on this equal protection argument, Childs's petition would not result in his immediate release from custody.

▪ Such claims, however, are appropriately brought under § 1983. *See Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In *Murray,* 492 U.S. at 3, 109 S.Ct. 2765, the Supreme Court held that the claims of indigent death row inmates who complained that the United States Constitution required that they be provided with counsel at the state's expense for the purpose of pursuing collateral proceedings related to their convictions and sentences could be heard under § 1983. Similarly, in *Tunin,* actions that challenged the validity of New York State's parole procedures were held cognizable as § 1983 claims because, while the petitioners alleged systemic discrimination within parole decisions, they did not assert a right to release or commutation of their sentences.

Accordingly, since Childs's proposed equal protection claim is not cognizable in a habeas proceeding, his motion to amend is denied.

## ORDER

Childs's petition under 28 U.S.C. § 2254 for a writ of habeas corpus is denied; and the motion to amend the petition is denied.

Because Childs has not made a "substantial showing of the denial of a constitutional right," this Court will not grant a certificate of appealability. *See Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.) (holding that a substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason or (ii) a court could resolve the issues in a different manner or (iii) the questions are adequate to deserve encouragement to proceed further).

The Clerk of Court is directed to amend the judgment to reflect the denial of a certificate of appealability, and Childs's time to file a notice of appeal shall begin to run from the entry of such amended judgment.

SO ORDERED.